GOODEN v TRANSAMERICA INSURANCE CORPORATION OF
AMERICA

Docket No. 97559. Submitted December 8, 1987, at Grand Rapids.
Decided March 7, 1988. Leave to appeal applied for.

Corteen G. Gooden brought an action in Muskegon Circuit Court
against Transamerica Insurance Corporation of America, his
no-fault insurer, seeking personal injury protection benefits for
injuries he sustained in a fall from the bed of his parked
pickup truck. Plaintiff, in his efforts to assist a friend in
chipping ice off the roof of the friend's house, had parked his
pickup truck next to the house and positioned a ladder against
the house from the truck bed. As he was stowing the ladder
after its use, plaintiff fell off the truck bed and onto the ground,
impaling himself on the handle of an ax. The trial court, R.
Max Daniels, J., following a bench trial, at which defendant
conceded that plaintiff was alighting from the truck at the time
of his injury, entered a judgment of no cause of action, conclud-
ing that plaintiff had not been using the truck as a motor
vehicle at the time of the injury, as required by the no-fault
act. Plaintiff appealed.

The Court of Appeals held:

1. In order to recover personal injury protection benefits for
an injury in a case involving a parked vehicle, the claimant
must establish that the motor vehicle was being used as a
motor vehicle and that one of the exceptions to the parked
vehicle exclusion applies.

2. Use of a parked motor vehicle as a motor vehicle is not
conclusively established from the mere fact that one of the
exceptions to the parked vehicle exclusion is found to apply.

3. A two-pronged test is applied in determining whether the
relationship between a motor vehicle and an injury is such that
it meets the requirements of the no-fault act. Such test asks: (1)

REFERENCES

Am Jur 2d, Automobile Insurance §§ 289, 340, 351 et seq.
What constitutes occupancy of motor vehicle for purposes of no-
fault automobile insurance coverage. 35 ALR4th 364.
Scope of clause of insurance policy covering injuries sustained while
"in or on" or "in or upon" motor vehicle. 39 ALR2d 952.

Could the injury just as well have occurred elsewhere? (if so, there is no recovery) and (2) Was the act which immediately precipitated the injury identifiable with the normal use of a motor vehicle? (if so, there is recovery). These two prongs need not always be linked together. Thus, if the injury can only occur in a motor vehicle regardless of the nature of the immediately precipitating act, there is coverage under the no-fault act.

4. In this case, plaintiff was not using his truck as a motor vehicle at the time of the accident. The truck had merely been used as a perch from which to position and stabilize a ladder. Plaintiff's accident is not of a type which could not have occurred except in a motor vehicle. Thus, with the causal connection between the accident and the truck being merely incidental, fortuitous, or "but for," the trial court correctly determined that plaintiff is not entitled to personal injury protection benefits under the no-fault act.

Affirmed.

1. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION — PARKED VEHICLES.

A claimant who seeks personal injury protection benefits from his no-fault insurer for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a parked motor vehicle must establish that the motor vehicle was being used as a motor vehicle and that one of the exceptions to the parked vehicle exclusion provided by the no-fault act applies (MCL 500.3106; MSA 24.13106).

2. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION — PARKED VEHICLES.

Use of a parked motor vehicle as a motor vehicle is not conclusively established from the mere fact that one of the exceptions to the parked vehicle exclusion is found to apply (MCL 500.3106; MSA 24.13106).

3. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION.

A two-pronged test is applied in determining whether the relationship between a motor vehicle and an injury is such that it meets the requirements of the no-fault act provision regarding personal injury protection benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle; such test asks: (1) Could the injury just as well have occurred elsewhere? (if so, there is no recovery), and (2) Was the act which immediately precipitated the injury identifiable with the normal use of a motor vehicle?

(if so, there is recovery); these two prongs need not always be linked together; thus, if the injury can only occur in a motor vehicle regardless of the nature of the immediately precipitating act, there is coverage under the no-fault act (MCL 500.3105; MSA 24.13106).

*Libner, Van Leuven & Kortering, P.C.* (by *John A. Braden*), for plaintiff.

*Dilley, Dewey & Damon, P.C.* (by *Jonathan S. Damon*), for defendant.

Before: R. M. MAHER, P.J., and GRIBBS and L. F. SIMMONS,* JJ.

R. M. MAHER, P.J. Plaintiff appeals as of right from a judgment of no cause of action entered against him by the Muskegon Circuit Court. That judgment had the effect of dismissing his claim against defendant, his no-fault insurer, for personal injury protection (PIP) benefits. We affirm.

Plaintiff was injured on February 16, 1985, shortly after he finished chipping ice off the roof of a friend's home. To assist him in this chore, plaintiff parked his pickup truck next to the house and positioned the ladder against the roof from the truck bed. This was done to ensure greater stability and to extend the ladder's reach. After knocking off the snow and ice with a small ax, plaintiff dropped the tool into the snowbank below, where it landed handle up. As he was taking down the ladder, he stumbled on some ice which had dropped into the truck bed. To avoid falling on firewood stacked in the truck, he threw himself over the edge of the truck in hopes of landing on the snowbank. His hopes were met—unfortunately. He landed in a straddle position atop the ax, impaling himself on the handle. He was able to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

drive to a local hospital where he stayed for six days and incurred substantial medical expenses.

Plaintiff thereafter filed an application for PIP benefits with defendant. Following defendant's denial of the application, plaintiff commenced this suit in the Muskegon Circuit Court. A bench trial was held on the matter, at the conclusion of which the judge issued a judgment of no cause of action. The judge ruled that plaintiff had not been using the truck as a motor vehicle at the time of the injury, as required by § 3105(1) of the Michigan no-fault insurance act, MCL 500.3105(1); MSA 24.13105(1).

Pursuant to § 3105(1), a no-fault insurer "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle *as a motor vehicle . . . .*" (Emphasis added.) Where, as in this case, an injury is sustained while the vehicle is parked, recovery under the no-fault act is generally precluded. MCL 500.3106; MSA 24.13106; *Harkins v State Farm Mutual Automobile Ins Co,* 149 Mich App 98, 100; 385 NW2d 741 (1986), lv den 425 Mich 877 (1986). However, several statutory exceptions exist to this "parked vehicle exclusion" which permit recovery. One of these exceptions is where "the injury was sustained by a person while occupying, entering into, or alighting from the vehicle." MCL 500.3106(1)(c); MSA 24.13106(1)(c).

In the instant case, defendant concedes that plaintiff was "alighting" from the truck (albeit in a rather unorthodox fashion) but asserts that he was not entitled to PIP benefits because the truck was not being used as a motor vehicle at the time. In response, plaintiff argues that if an exception to the parked vehicle exclusion applies then the injury must necessarily have arisen out of the use of

a motor vehicle as a motor vehicle. We disagree with that argument.

In prior decisions of this Court, it has overwhelmingly been held that, in order to recover for an injury in cases such as this, a claimant must show that an exception to the parked vehicle exclusion applies *and* the injury arose out of the use of a motor vehicle as a motor vehicle. This latter requirement means that there must be a sufficient causal nexus between the use of the motor vehicle and the injury. See, e.g., *Perryman v Citizens Ins Co of America,* 156 Mich App 359, 363-365; 401 NW2d 367 (1986), lv den 428 Mich 874 (1987); *Harris v Grand Rapids Area Transit Authority,* 153 Mich App 829, 831-832; 396 NW2d 554 (1986); *Shaw v Allstate Ins Co,* 141 Mich App 331, 333-334; 367 NW2d 388 (1985), lv den 426 Mich 871 (1986); *Auto-Owners Ins Co v Turner,* 135 Mich App 522, 524, n 2; 354 NW2d 813 (1984); *Johnston v Hartford Ins Co,* 131 Mich App 349, 357-360; 346 NW2d 549 (1984), lv den 419 Mich 893 (1984); *Teman v Transamerica Ins Co of Mich,* 123 Mich App 262, 265-266; 333 NW2d 244 (1983); *King v Aetna Casualty & Surety Co,* 118 Mich App 648, 651-652; 325 NW2d 528 (1982), lv den 418 Mich 881 (1983); *Krueger v Lumbermen's Mutual Casualty Co,* 112 Mich App 511, 516; 316 NW2d 474 (1982); *Block v Citizens Ins Co of America,* 111 Mich App 106, 108-109; 314 NW2d 536 (1981); *Dowdy v Motorland Ins Co,* 97 Mich App 242; 293 NW2d 782 (1980); *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 312-315; 282 NW2d 301; 15 ALR4th 1 (1979), lv den 407 Mich 895 (1979). See also *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975). In *Shinabarger, supra,* pp 314-315, the dual requirement was succinctly explained:

Section 3106, which establishes criteria for accidents involving parked vehicles, does not abrogate the need for a causal connection between the automobile and the injury. As the wording of the section makes clear, it establishes only minimum criteria for accidents involving parked vehicles. Under § 3106, no injury involving a parked vehicle may be compensated for unless one of the criteria therein is met; however, fulfillment of the requirements of § 3106 does not automatically result in liability. Even after the threshold of § 3106 is crossed, it must still be established that the injury arose out of the ownership, operation, maintenance or use of the motor vehicle.

To our knowledge, only one case has expressly held that once an exception to the parked vehicle exclusion is found to apply then no such "causal connection" need be shown. See *McPherson v Auto-Owners Ins Co,* 90 Mich App 215; 282 NW2d 289 (1979), lv den 407 Mich 908 (1979). Our sentiments as to that case were best expressed in *King, supra,* p 652:

We once again take the opportunity to respectfully wish *McPherson* a speedy burial.

Considering the unanimity of post-*McPherson* decisions in requiring a separate showing that the motor vehicle was being used as a motor vehicle, we are confident that that case has long since been laid to rest.

Plaintiff argues, though, that *McPherson* has been resurrected by the Supreme Court's decision in *Clute v General Accident Assurance Co of Canada,* 428 Mich 871; 401 NW2d 615 (1987), rev'g 142 Mich App 640; 369 NW2d 864 (1985). We believe plaintiff has construed the holding of *Clute* too broadly. To explain our belief, it is necessary to examine more closely this Court's and the Su-

preme Court's decisions in *Clute* and the underlying bases of those decisions.

In *Clute* the plaintiff was injured when a car crashed into a van where she was sleeping. The van had been parked off the street next to an acquaintance's house at the time.

When the case was before this Court, two members of the panel held that defendant, the no-fault insurer of the van, was not liable to pay for plaintiff's medical expense. The majority reasoned:

> Here, the van was parked off the street and was being used for sleeping accommodations, apparently because the house by which it was parked could not accommodate all of the guests. Furthermore, it was not adapted for such use by its owner. We agree with the trial court that the van was not being used as a motor vehicle. [142 Mich App 643.]

Judge Hood dissented from that holding, stating that the majority's inquiry into whether the van was being used as a motor vehicle at the time of the collision was irrelevant for purposes of § 3114(4), the no-fault provision in dispute.[1] MCL 500.3114(4); MSA 24.13114(4). This was the thrust of Judge Hood's dissent. 142 Mich App 644-645. But, by way of dictum, he went on to say that not only was the majority's analysis irrelevant, it was erroneous as well. He felt that "when a parked motor vehicle involved in a motor vehicle accident fits one of the exceptions to the parking exclusion (§ 3106), *it is conclusive that the vehicle was in use 'as a motor vehicle.'* " (Emphasis added.) *Id.,* p 647. Judge Hood based that belief on the Supreme Court's decisions in *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139; 324 NW2d 1

[1] For purposes of this appeal, it is not necessary to understand why this is so. For an explanation, though, see *Kalin v DAIIE,* 112 Mich App 497, 500-501; 316 NW2d 467 (1982), lv den 417 Mich 853 (1982).

(1982), and *Miller v Auto-Owners Ins Co,* 411 Mich 633; 309 NW2d 544 (1981).

In a summary decision, the Supreme Court ruled, without independent explanation, that "the judgment of the Court of Appeals is reversed for reasons stated by Judge Hood in the Court of Appeals, . . ." 428 Mich 871. Assuming that decision was an expression of approval for the entirety of Judge Hood's dissent—and not just that portion discussing the application of § 3114(4)—we would be constrained to agree with plaintiff that, if an exception to the parked vehicle exclusion is found to exist, the vehicle was conclusively in use as a motor vehicle at the time. However, absent express direction, we do not believe the Supreme Court intended to summarily cast away near-unanimous precedent from this Court by adopting language from a dissent which was unnecessary for disposition of the case. Moreover, our belief is supported by policy considerations underlying the no-fault act, principles of statutory construction, and prior decisions of the Supreme Court itself.

The basic goal of the no-fault insurance system is to provide individuals injured in motor vehicle accidents assured, adequate and prompt reparation for certain economic losses at the lowest cost to the individual and the system. See *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978); *Babbit v Employers Ins of Wausau,* 136 Mich App 198, 201; 355 NW2d 635 (1984), lv den 419 Mich 962 (1984); *Dolson v Secretary of State,* 83 Mich App 596, 599; 269 NW2d 239 (1978). The no-fault act does not purport to compensate accident victims for all economic losses. *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33, 39; 302 NW2d 588 (1981). In *Miller, supra,* p 641, the Supreme Court stated that the policy underlying the parked vehicle exclusion was

to eliminate from no-fault coverage those injuries where the involvement of the motor vehicle did not relate to its character as such. By limiting the coverage of no-fault benefits, "it appears that the Legislature was attempting to maintain cost controls over the system by limiting its scope." *Babbit, supra,* pp 201-202. To expand coverage to include activity which is removed from the general use of motor vehicles would increase the cost of insurance and the incidence of litigation, thereby thwarting the legislative intent in enacting the no-fault system. *Block, supra,* p 109. In other words, to allow no-fault recovery, without regard to whether the injury resulted from a motor vehicle being used as such, would open up the system beyond its intended scope.

The policies behind the specific no-fault provisions in question likewise support our conclusion that there must be a separate inquiry into whether the vehicle was used as a motor vehicle. The policies behind § 3105(1) and § 3106(1) were discussed at great length in *Miller, supra.* There, the Supreme Court noted:

> Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle.* Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.
>
> The stated exceptions to the parking exclusion clarify and reinforce this construction of the exclusion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents. [Emphasis in original. 411 Mich 639-640.]

Elsewhere in *Miller,* the Court explained that "[e]ach of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle." *Id.,* pp 640-641. It is clear from *Miller* that the policy considerations are essential for determining the scope of the three exceptions to the parked vehicle exclusion. Those policy considerations form the foundation on which the exceptions rest. Remove the foundation, and the exceptions topple. We do not read *Miller* as holding that, whenever an exception is technically satisfied, no-fault recovery is available despite being adverse to the underlying policy of the act. Subsequent Supreme Court decisions further support our conclusion.

Most recently, in *Bialochowski v Cross Concrete Pumping Co,* 428 Mich 219, 229; 407 NW2d 355 (1987), after determining that a cement truck was being used as a motor vehicle at the time plaintiff was injured, the Supreme Court stated:

> Having concluded that the equipment truck was a motor vehicle being used as a motor vehicle, our inquiry is not complete. In order to receive no-fault benefits for an injury involving a parked vehicle, one of the criteria established in § 3106 of the no-fault act must be met.

While primarily a workers' compensation reimbursement case, *Bialochowski* is important because it reveals the two-step procedure which must be followed when determining no-fault eligibility in parked vehicle cases: first, the motor vehicle must have been used as a motor vehicle; and second, one of the exceptions to the parked vehicle exclusion must be found to apply.

The fact that there must be a separate inquiry

into whether the motor vehicle was being used as a motor vehicle was further emphasized in *Thornton v Allstate Ins Co,* 425 Mich 643, 659-660; 391 NW2d 320 (1986). After discussing the *Miller* Court's reconciliation of the apparent conflict between §§ 3105 and 3106, the Supreme Court in *Thornton* stated:

> In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle *as a motor vehicle.*" In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." *Miller v Auto-Owners, supra.* Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), [sic] must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits.

Considering the emphasis in *Bialochowski* and *Thornton* on determining the application of both §§ 3105(1) and 3106(1), it is clear that use of a motor vehicle as a motor vehicle is not conclusively established from the mere fact that one of the exceptions to the parked vehicle exclusion is found to apply.

Simple statutory construction also leads us to that conclusion. In *Johnston, supra,* p 361, it was held:

> We conclude, therefore, that the language of the no-fault act requires not only that a vehicle be a

motor vehicle but, in order to establish liability, it must also be used as a motor vehicle at the time of the accident. If the Legislature had intended coverage for any accident involving a motor vehicle, the additional requirement that the accident arise out of the use of a motor vehicle as a motor vehicle would be unnecessary surplusage.

It is a well-established rule of statutory construction that the language of a statute should not be treated as surplusage or rendered nugatory if at all possible. *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980). Moreover, statutes in pari materia must be construed to preserve the intent of each and, if possible, interpreted in such a way that neither denies the effectiveness of the other. *Crawford Co v Secretary of State,* 160 Mich App 88, 95; 408 NW2d 112 (1987). The *Miller* Court recognized that rule of construction as it applies to the no-fault provisions in question:

> The policies underlying § 3105(1) and § 3106 thus are complementary rather than conflicting. Nothing of the policy behind the parking exclusion —to exclude injuries not resulting from the involvement of a vehicle as a motor vehicle—conflicts with the policy of compensating injuries incurred in the course of maintaining (repairing) a motor vehicle. The terms of the parking exclusion should be construed to effectuate the policy they embody and to avoid conflict with another provision whose effect was intended to be complementary. [411 Mich 641.]

To ignore the express language of § 3105(1) would be a violation of not only a general rule of statutory construction but an unambiguous Supreme Court decision as well.

Having concluded that there must be a separate

inquiry into whether the motor vehicle was being used as a motor vehicle at the time of the accident, we must now determine whether this was shown in the instant case.

To show that an injury is compensable under § 3105(1), the claimant must satisfy a two-pronged test:

> (a) Could the injury just as well have occurred elsewhere? If so, there is no recovery. . . .
> (b) Was the act which immediately precipitated the injury identifiable with the normal use of a motor vehicle? If so, there is recovery. [*Denning v Farm Bureau Ins Group,* 130 Mich App 777, 786; 344 NW2d 368 (1983), lv den 419 Mich 877 (1984).]

It is not absolutely required, though, that these two prongs be linked together before no-fault recovery is available. The *Denning* Court noted that there may be "a case where the injury could not have occurred except in an automobile but the act which immediately precipitated the injury is not identifiable with the normal use of a motor vehicle. . . . Thus, it appears that if the injury can only occur in a motor vehicle regardless of the nature of the immediately precipitating act, there is coverage under the no-fault statute." *Id.* We must caution too that the phrase "use of a motor vehicle as a motor vehicle" must be given a broad remedial interpretation. If the vehicle is designed for many different purposes, the statutory mandate is satisfied where the accident occurred while the vehicle was being used for one of those intended purposes. *Bialochowski, supra,* pp 228-229.

Applying those standards to the case at bar, we can only conclude that plaintiff was not using his truck as a motor vehicle at the time of the accident. The truck had merely been used as a perch

from which to position and stabilize the ladder. Thus, it was not unlike any other stationary object such as a tree, sign post, or boulder. *Miller, supra,* pp 639-640. Plaintiff's truck was nothing more than a scaffold. Certainly, this was not the type of accident which could not have occurred except in a motor vehicle. *Denning, supra,* p 786. The causal connection between the accident and the truck was merely incidental, fortuitous, or "but for." *Thornton, supra,* pp 659-660. Finally, our holding is not changed by the fact that plaintiff was in the process of stowing the ladder on the truck when he stumbled over the side. Preparing to use a motor vehicle as a motor vehicle does not satisfy § 3105. Although we certainly sympathize with plaintiff's injury, his is not the type for which the no-fault system was designed to compensate.

Affirmed.