# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL KEMP,

Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellee.

UNPUBLISHED
May 5, 2015

No. 319796
Wayne Circuit Court
LC No. 13-008264-NF

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

BECKERING, P.J. (*dissenting*).

In this action seeking personal injury protection (PIP) benefits from his automobile insurance carrier, plaintiff, Daniel Kemp, appeals as of right the trial court's order granting summary disposition to defendant, Farm Bureau General Insurance Company, pursuant to MCR 2.116(C)(10). Because plaintiff presented evidence to establish that he injured himself as a direct result of property being lowered from his vehicle in the unloading process, which fits squarely within the parked vehicle exception set forth in MCL 500.3106(1)(b), I would find that the trial court erred in granting summary disposition to defendant.

We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109,118; 597 NW2d 817 (1999). The trial court must consider the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Statutory interpretation also presents a question of law that we review de novo. *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010). The primary goal of statutory interpretation "is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). When the language is clear and unambiguous, "no further judicial construction is required or permitted, and the statute must be enforced as written." *Pohutski v City of Allen Park*, 465 Mich 675, 683;

-1-

641 NW2d 219 (2002) (quotation marks and citation omitted). A statutory provision must be read in the context of the entire act, and "every word or phrase of a statute should be accorded its plain and ordinary meaning . . . ." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). "It is a well-established rule of statutory construction that this Court will not read words into a statute." *Byker* v *Mannes*, 465 Mich 637, 646-647; 641 NW2d 210 (2002).

On September 15, 2012, plaintiff owned a 2010 Chevrolet Silverado truck, insured by defendant. Plaintiff testified at his deposition that on that date, he arrived home, parked the truck in his driveway, and was in the process of unloading personal items from the truck when he tore his calf muscle and injured his lower back.

The trial court granted summary disposition to defendant, concluding that, under MCL 500.3106(1), which addresses no-fault coverage for accidental injuries involving parked motor vehicles, plaintiff's alleged injuries did not have sufficient "linkage . . . with the use [or] operation of [the] motor vehicle" and because the causal nexus between the injury and the motor vehicle was "merely incidental." In so doing, the trial court questioned the credibility of plaintiff's deposition testimony in light of an entry made by plaintiff's treating physician, Dr. Surinder M. Kaura, in plaintiff's medical records. The trial court concluded that "we don't know whether the plaintiff can be believed because he told the doctor something else" about the origin of the injury. The trial court also rejected as "ridiculous" Dr. Kaura's affidavit because Dr. Kaura "didn't witness the accident" and the affidavit contained medical opinions outside Dr. Kaura's area of expertise.

As an initial matter, I agree with plaintiff's contention that the trial court erred by making credibility determinations and by failing to view the evidence in a light most favorable to him, the nonmoving party on defendant's motion for summary disposition. See *Rednour v Hastings Mut Ins Co*, 468 Mich 241, 250 n 4; 661 NW2d 562 (2003) (explaining that, in reviewing a motion for summary disposition, a court is not to make credibility determinations and is to review the evidence in a light most favorable to the nonmoving party). The trial court, based on an entry in plaintiff's medical records that described the injury as occurring "at home," in contrast to plaintiff's deposition testimony about how he was injured while removing items from his vehicle, found that plaintiff lacked credibility. Notwithstanding the fact that claiming that an injury occurred at home is not inconsistent with claiming that an injury occurred in one's driveway—which is at home—such credibility assessment was improper in the context of summary disposition.[1]

---

[1] In addition, the trial court erred when it deemed Dr. Kaura's affidavit "ridiculous" and not worthy of consideration. Dr. Kaura averred that he was of the opinion, based on the information he had received in this case, that plaintiff's "calf and low back injuries arose out of the process of unloading the items as [plaintiff] described . . . ." Such a statement was a proper opinion regarding the cause of plaintiff's alleged injuries. See MRE 702. Expert witnesses do not need to witness an incident in order to opine regarding causation.

Moreover, I find that the trial court erred in its interpretation and application of the no-fault act and the parked vehicle exception. MCL 500.3106(1), which addresses no fault coverage for accidental injuries involving parked motor vehicles, provides in pertinent part:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or *use of a parked vehicle as a motor vehicle unless any* of the following occur:
>
> * * *
>
> (b) Except as provided in subsection (2), the *injury was a direct result of* physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or *property being* lifted onto or *lowered from the vehicle in the* loading or *unloading process.* [Emphasis Added.]

As noted in *Miller v Auto-Owners Ins Co*, 411 Mich 633, 641; 309 NW2d 544 (1981) (emphasis added), each of the exceptions to the parking exclusion "describes an instance where, although the vehicle is parked, its involvement in an accident *is nonetheless directly related to its character as a motor vehicle.* The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident as a motor vehicle."

In *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626; 563 NW2d 683 (1997), our Supreme Court set forth the following three-part test for determining whether an alleged injury fell within the parked vehicle exception set forth in MCL 500.3106(1). The Court explained that a plaintiff must demonstrate that:

> (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation maintenance, or use of the parked motor vehicle as a motor vehicle, and (3) the injury had a casual relationship to the parked motor vehicle that is more than incidental fortuitous, or but for. [*Id.* at 635-636.]

In *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 217 n 3; 580 NW2d 424 (1998), a case that involved a plaintiff who sustained injuries while sleeping in a camper/trailer that was attached to his pickup truck, the Supreme Court clarified *Putkamer*. Regarding the second step of the test, whether the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*, the Court explained that "the Legislature intended coverage of injuries resulting from the use of motor vehicles when closely related to their transportational function and only when engaged in that function." *Id.* at 220. The *McKenzie* Court reasoned that the Legislature did not intend for occasions that were not closely related to the transportational function of motor vehicles, "rare as they may be" to be covered under the no-fault act. *Id.* at 219 (providing a non-exhaustive list of the "other occasions" when an automobile is not used for transportation as when the vehicle is used as a housing facility, an advertising display, a foundation for construction equipment, a mobile public library, or even a display at a museum). And, although the vehicle must be used for "transportational purposes," it "need not be moving at the time of an injury for the injury to arise out of the use of a motor vehicle as a motor vehicle, i.e., out of its transportational function." *Id.* at 219 n 6.

The instant case involves the exception found in MCL 500.3106(1)(b). As this Court explained in *Adanalic v Harco Nat'l Ins Co*, __ Mich App __; __ NW2d __ (Docket No. 317764, issued February 5, 2015), slip op at 4, "MCL 500.3106(1)(b) contains two independent clauses such that it provides coverage where the injury was the direct result of physical contact with either: equipment permanently mounted on the vehicle *or* property being lifted onto or lowered from the parked vehicle in the loading or unloading process." (Quotation and citation omitted). This case involves the latter of those clauses, i.e., whether the injury was the direct result of physical contact with property being lifted onto or lowed from the parked vehicle in the loading or unloading process.

Here, given plaintiff's contention that he tore his calf muscle and injured his back as a direct result of lowering property from his vehicle in the process of unloading it, and viewing the evidence in the light most favorable to him, statutory coverage fits squarely within the provisions of MCL 500.3106(1)(b). Plaintiff described the circumstances of his injury at his deposition as follows:

A: I was in the process of unloading my personal items. I had a briefcase, I had an overnight bag and a thermos. I was unloading the items. I had one hand against the seat. I leaned in the vehicle, picked up my items, brought them outside as I twisted to set them down. That's when I heard [a] bang [from his right calf[2]], stuff fell to the ground, I fell in the truck.

* * *

Q: Could you describe again . . . the sequence of action that took place as you reached into the vehicle to the point where you experienced the pain in your leg?

A: I had my left hand on the back seat . . . the head rest . . . . I reached in and grabbed my briefcase, the thermos and the overnight bag . . . . Lifted them up, brought 'em over the top of case of beer [in the back of the truck]. As I turned to lower them into [sic] the ground, that's when I heard the bang.

* * *

Q: So you had lifted them out of the vehicle and when you turned to lower them to the ground, had you taken a step back away from the vehicle to clear an area so you could lower them to the ground?

A: No, sir.

* * *

---

[2] Plaintiff testified that he was told by his doctors that he tore his soleus muscle: "I'm not trying to say anything medical. But one of the muscles tore in two places, one down by the ankle, one up by the knee and possibly a third one in the middle of my calf. And when it happened, it just exploded."

Q: From the point where you placed your feet and made that movement to lift the items out, did you change the position of your feet at all to the point where you were lowering the items to the pavement and felt the pain in your leg?

A: Well, from leaning in, my feet weren't flat on the ground, from leaning in. I was up on the top of my feet . . . .

* * *

Q: Had you actually put them [the three items] on the ground when you experienced this first sign of something being wrong with the lower part of your body?

A: No, sir.
Q: Did you drop them on the ground when you experienced the pain?
A: Yes, sir.

* * *

Q: When you experienced this pain in your leg, did you experience any increased pain in your lower back?

A: Right.
Q: Immediately?
A: Yes, sir.


Simply put, plaintiff's accidental bodily injury arose out of the use of his parked vehicle as a motor vehicle because, per the parked motor vehicle exception set forth in MCL 500.3106(1)(b), his "injury was a direct result of . . . property being . . . lowered from the vehicle in the . . . unloading process." Giving accord to the "plain and ordinary meaning" of "every word or phrase" of the statute, *Krohn*, 490 Mich at 156, and refraining from reading words into the statute, *Byker*, 465 Mich at 646-647, nothing could be more on point to the circumstances here. Contrary to defendant's contention, the mere fact that plaintiff, like any one of us, could have injured those same body parts in other ways at other times has no bearing to whether the statute provides coverage in this instance. Rather, what is pertinent in this case is that plaintiff's alleged injuries occurred as a direct result of unloading his personal effects from his vehicle. MCL 500.3106(1)(b) expressly provides coverage in such an instance. And, contrary to defendant's suggestions, the injuries arose out of the operation or use of the parked vehicle in its transportational function. Indeed, it is axiomatic that when one travels in a vehicle, one will take personal effects along for the ride and will seek to unload those personal effects when the drive is finished. Here, plaintiff alleged that, in the process of unloading his personal effects from the vehicle, he sustained injuries. This is precisely within the second step of the *Putkamer* analysis and within the plain language of MCL 500.3106(1)(b). Cf. *McKenzie*, 458 Mich at 226 (finding that the "requisite nexus between the injury and the transportational function of the motor vehicle" was lacking because, at the time the injury occurred, the parked camper/trailer was being used as nothing more than sleeping accommodations); *Yost v League Gen Ins Co*, 213 Mich App 183, 185; 539 NW2d 568 (1995) (finding that the vehicle was not being used as a motor vehicle when the plaintiff was sleeping in the car, thus using it "as nothing more than a bed."); *Gooden v Transamerica Ins Corp of America*, 166 Mich App 793, 805-806; 420 NW2d 877 (1988) (holding that the plaintiff's truck was not being used as a motor vehicle at the time of

the accident when the truck "had merely been used as a perch from which to position and stabilize [a] ladder. Thus, it was not unlike any other stationary object such as a tree, sign post or boulder.").

Furthermore, plaintiff's vehicle was not, as defendant contends, merely the situs of the injury such that the injury was void of a causal relationship to the parked motor vehicle. Rather, on the facts alleged, the injury had a causal relationship to the parked motor vehicle that was more than incidental, fortuitous, or but for. Upon exiting the vehicle, plaintiff went to retrieve his personal effects from inside. In so doing, he leaned forward, procured his effects, and went to set them down, outside the vehicle. It was this very act—removing items from the vehicle and attempting to set them down—that was the cause of the alleged injury. Therefore, plaintiff's injury had a direct causal relationship to the parked vehicle that was more than merely incidental, fortuitous, or but for. See *Putkamer*, 454 Mich at 636. Cf. *Williams v Pioneer State Mut Ins Co*, 497 Mich 875, 875-876; 857 NW2d 1 (2014) (holding that where a tree branch fell from above, hitting plaintiff in the head as she was entering her vehicle, the causal relationship, if any, between the plaintiff's injury and the parked car was at most incidental). Our Supreme Court's decision in *Putkamer*, 454 Mich at 636 (emphasis added), is illustrative in this regard. Notably, in *Putkamer*, our Supreme Court analyzed the causation prong with regard to a plaintiff who was alighting from her vehicle when she slipped and fell on ice, injuring herself. It held that

> "[t]he act of shifting the weight onto one leg created the precarious condition that precipitated the slip and fall on ice. *This injury appears to be exactly the kind of injury that the Legislature decided should be covered* when it established an exception to the parked vehicle exclusion for entering a parked vehicle under 3106(1)(c)."

Likewise, here, plaintiff's act of raising up onto his tiptoes, angling his body into the interior of the car in order to lift up his property, and twisting his body in order to extricate the property from his vehicle and lower it onto the ground, which precipitated his calf muscle tear and back injury, appears to be *exactly the kind of injury that the Legislature decided should be covered* when it established an exception to the parked vehicle exclusion for "property being . . . lowered from the vehicle in the . . . unloading process" under 3106(1)(b). The mere fact that the plaintiff in *Putkamer* could have fallen on the ice moments after she alighted from her car, or that plaintiff here could have injured himself when placing his briefcase on the kitchen counter, is irrelevant to the analysis. Because plaintiff's injuries occurred during and *because of* the activity covered in 3106(1)(b), just as the plaintiff's injury in *Putkamer* occurred during and because of the activity covered in 3106(1)(c), *Putkamer* directs the outcome here regarding causation.

Defendant cites *Shellenberger v Insurance Co of North America*, 182 Mich App 601; 452 NW 2d 892 (1990), and describes the case as being "eerily similar factually" to the case at hand. I find the citation to *Shellenberger* unavailing for multiple reasons. Initially, the plaintiff was not unloading a parked vehicle as was plaintiff here; rather, he was sitting inside his vehicle and simply reached to move a briefcase within the interior of the truck. *Id*. at 602. Given those distinguishable facts, and as defendant admits, the applicable statute at issue in that case was

MCL 500.3105(1), not MCL 500.3106(1).[3]  *Id.* at 603.  Furthermore, *Shellenberger* is not binding, as it was issued before November 1, 1990.  See MCR 7.215(J)(1).

Moreover, an examination of the facts and reasoning in *Shellenberger* illustrates its inapplicability in the case at bar.  In *Shellenberger*, 182 Mich App at 603-605, the panel concluded that the plaintiff's connection to the motor vehicle—merely sitting in the motor vehicle while reaching for a briefcase—was too attenuated to impose liability under the no-fault act.  In this regard, the panel concluded that "[i]t was a mere fortuity that plaintiff's injury occurred as he was sitting in the truck.  The particular setting of the truck suggests nothing specific to its operation or use as a motor vehicle that played a part in the injury."  *Id.* at 604. The panel went on to remark:

> [M]oving the briefcase by reason of the configuration of the interior of the truck cannot be said to result from some facet particular to the normal functioning of a motor vehicle.  The need to make similar movements in order to reach for a briefcase routinely occurs in offices, airports, homes, conference rooms, courtrooms, restaurants, and countless other settings where no-fault insurance does not attach.  The fact that plaintiff's movement in reaching for the briefcase occurred in the interior of the truck does not transform the incident into a motor vehicle accident for no-fault purposes. [*Id.* at 605.]

The instant case differs significantly from *Shellenberger*.  Unlike moving a briefcase while one merely happens to be sitting within the interior of a car, loading and unloading one's personal effects from a motor vehicle upon arrival at one's destination *can* be said to result from some facet particular to the normal functioning of a motor vehicle, just as is loading (entering into) and unloading oneself (alighting) from the vehicle.  It makes little sense to conclude that unloading oneself from a vehicle relates to the transportational function of a car, but that unloading one's possessions does not.  Indeed, it is not a "mere fortuity" that one who just completed a drive in a motor vehicle will seek to remove his or her personal effects from that same motor vehicle.  The very intent of a vehicle is to transport people and their property. Viewing the facts in a light most favorable to plaintiff, he injured himself as a direct result of unloading property from his vehicle upon reaching his destination, thereby demonstrating that he was using the vehicle for transportational purposes at the time of his injury, and providing a causal connection to the use of his motor vehicle that was not merely incidental, fortuitous, or but for.  See *Putkamer*, 454 Mich at 635-636.  Cf. *Williams*, 497 Mich at 875-876; *McKenzie*, 458 Mich at 226; *Yost*, 213 Mich App at 185; *Gooden*, 166 Mich App at 805-806.

---

[3] In fact, as the dissenting opinion in *Shellenberger* pointed out, this Court had earlier held that at the time of the injury the plaintiff was 'acting as a truck driver,' and concluded that the loading or unloading provision did not apply.  *Id.* at 606 (citing *Shellenberger v Ins Co of North America*, unpublished opinion per curiam of the Court of Appeals, decided October 8, 1987 (Docket No. 94198)).

Because I can imagine no scenario better than this one to exemplify what it means to injure oneself as a direct result of "property being . . . lowered from the vehicle in the . . . unloading process[,]" MCL 500.3106(1)(b), I would find that the trial court erred in granting summary disposition to defendant under MCR 2.116(C)(10), and would reverse and remand for further proceedings.

/s/ Jane M. Beckering