ENGWIS v MICHIGAN MUTUAL INSURANCE COMPANY

Docket No. 109858. Submitted August 9, 1989, at Lansing. Decided November 6, 1989. Leave to appeal applied for.

William Engwis purchased a new 1979 Chevrolet van which he subsequently equipped with a portable propane heater and used as a recreational vehicle on overnight camping and fishing trips. In September, 1984, Engwis went on a fishing trip. When he did not return when expected, his son-in-law went looking for him. Engwis was found dead inside his parked van, apparently from asphyxia caused by a leaking propane tank inside the van. Janet Engwis, individually and as personal representative of the estate of William Engwis, deceased, filed suit against Michigan Mutual Insurance Company, the Engwises' no-fault insurer, in Gratiot Circuit Court seeking no-fault benefits. The court, Timothy M. Green, J., granted summary disposition in favor of defendant, ruling that as a matter of law Engwis' use of the van as a camper was not a normal foreseeable or identifiable use of a vehicle and that the vehicle's use as a motor vehicle was not the cause of Engwis' death. Plaintiff appealed.

The Court of Appeals held:

1. The trial court erred in granting summary disposition on the ground that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. Deposition testimony conflicted as to whether Engwis' van had been converted into a recreational vehicle at the time he purchased it. Despite defendant's claims that the vehicle had not been converted into a recreational vehicle, plaintiff's factual allegations that the purchase of the van was made on the belief that the van had been converted into a recreational vehicle must be taken as true. Thus, a genuine issue of material fact exists, and summary disposition therefore was improperly granted.

2. If there is something about the vehicle itself which causes the injury to occur, there is coverage under the no-fault act.

Reversed and remanded for trial.

REFERENCES

Am Jur 2d, Automobile Insurance §§ 123, 354.

See the Index to Annotations under No-Fault Insurance; Parked or Parking Vehicle; Propane Gas; Recreation; Suffocation.

1. INSURANCE — NO-FAULT — PARKED VEHICLES.

> Although recovery under the no-fault act is generally precluded where a vehicle is parked at the time of the accident, a statutory exception permits recovery where the injury is sustained by a person while occupying the parked vehicle if the injury is foreseeably identifiable with the normal use, maintenance and ownership of the vehicle, i.e., there must be a sufficient causal nexus between the use of the motor vehicle and the injury (MCL 500.3106; MSA 24.13106).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATERIAL FACT.

> Where a genuine issue of material fact exists, summary disposition under MCR 2.116(C)(10) is improperly granted.

3. INSURANCE — NO-FAULT.

> If there is something about an automobile itself which causes an injury to occur, there is coverage under the no-fault act (MCL 500.3106; MSA 24.13106).

*Taylor, Pyscher & O'Neil, P.C.* (by *Daniel H. Pyscher*), for plaintiff.

*Chasnis, Dogger & Grierson, P.C.* (by *Mark Grierson*), for defendant.

Before: MURPHY, P.J., and NEFF and G. S. ALLEN,* JJ.

G. S. ALLEN, J. Where death results from asphyxia caused by a leaking portable propane tank located in a parked motor van, is plaintiff *as a matter of law* precluded from claiming no-fault benefits because death did not arise out of the use of a vehicle as a motor vehicle, as provided in MCL 500.3105; MSA 24.13105? The trial court answered this question in the affirmative, and on June 13, 1988, granted defendant's motion for

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

summary disposition pursuant to MCR 2.116(C)(8) and (10). Plaintiff appeals as of right.

The facts are substantially undisputed. In October, 1978, decedent, William Engwis, purchased a 1979 Chevy van from Siler Motor Sales, Inc., in Merrill, Michigan. The van came equipped with a built-in electrical rear heater. Decedent purchased a portable heater that was attached to a propane gas tank situated inside the van to serve both as a stove for cooking and as a heater. Decedent used the van as a recreational vehicle on overnight camping and fishing trips.

On September 28, 1984, decedent left on a fishing trip in his Chevy van. When decedent did not return home on September 30, as planned, his son-in-law went looking for him. On October 2, the van was found in a Department of Natural Resources parking area on highway US 31 in Benzie County. Decedent was found dead inside, facing the back of the van, his head on the edge of a bunk, clothed in a T-shirt and undershorts. The valve on the propane gas tank was in the "on" position and the tank was empty. The heater switch was also in the "on" position. The van's radio was on and the battery was dead.

The deposition testimony of plaintiff's expert witnesses agreed that death occurred when the flame on the portable heater went out and the propane gas filled the van to a point where anyone in the van would die of asphyxia. One of plaintiff's experts testified at deposition that the flame went out because of lack of oxygen and "the vehicle served as the containment for the gases."

Plaintiff, wife of decedent, testified at deposition that when her husband purchased the van he did so believing that it had been converted into a recreational vehicle by the dealership. Her husband regularly used the van on camping and

fishing trips. She stated that she too had slept in the vehicle about two weekends a month in the months of June, July and August, and that the van had a CB radio, a stereo, a couch and two captain's chairs.

Violet Sawade, the insurance agent who sold Mrs. Engwis the insurance policy covering the van, testified at deposition that when plaintiff came in regarding addition of the 1979 van to her husband's existing policy she made no mention that the newly purchased vehicle was a camper. She stated that a van similar to Engwis' with a fold-out bed or refrigerator would be considered to have been "customized" and an additional premium would have to be charged to cover such equipment. She also stated that the fact that decedent slept in the van when he went fishing would not have changed the rating factor for personal injury protection benefits.

The invoice from Siler Motor Sales covering the 1979 van was made an exhibit before the trial court. Nothing in that invoice suggests that the vehicle had been modified for use as a camper. The invoice reveals that the van was "designed, manufactured, sold and certified to applicable federal motor vehicle safety standards . . . as a bus, *multipurpose passenger vehicle* or truck . . . ." Also, instructions supplied with the portable heater/ stove warned the operator never to attempt "to operate the heater inside any vehicle, camper or enclosure unless you comply with applicable federal, state, and local regulations."

In November, 1987, defendant moved for summary disposition pursuant to both MCR 2.116(C)(8) and (10). In May, 1988, plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10).

It is undisputed that at the time of decedent's death the 1979 Chevy van was parked and dece-

dent was an occupant therein. Where a vehicle is parked at the time of an accident, recovery under the no-fault act is generally precluded. *Miller v Auto-Owners Ins Co,* 411 Mich 633, 639; 309 NW2d 544 (1981); *Wills v State Farm Ins Cos,* 178 Mich App 263, 266; 443 NW2d 396 (1989). The reason for this rule is that injuries involving parked vehicles normally do not involve the vehicle "as a motor vehicle." *Id.* However, a statutory exception to this general rule permits recovery where the injury is sustained by a person while occupying the parked vehicle:

> (1) Accidental bodily injury *does not arise out of the* ownership, operation, maintenance, or *use of a parked vehicle as a motor vehicle* unless any of the following occur:
>
> \* \* \*
>
> (c) . . . *the injury was sustained by a person while occupying,* entering into, or alighting from the vehicle. [MCL 500.3106; MSA 24.13106. Emphasis added.]

Mere occupancy or presence in the parked vehicle is insufficient to qualify a claimant for no-fault benefits under subsection 3106(1)(c). A claimant must still establish that his injuries arose out of the use of the motor vehicle "as a motor vehicle." *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 315; 282 NW2d 301 (1979), lv den 407 Mich 895 (1979); *Denning v Farm Bureau Ins Group,* 130 Mich App 777; 344 NW2d 368 (1983), lv den 419 Mich 877 (1984); *Gooden v Transamerica Ins Corp of America,* 166 Mich App 793; 420 NW2d 877 (1988), lv den 431 Mich 862 (1988).

The test for determining whether an injury occurring in a parked vehicle arises out of the use of the vehicle "as a motor vehicle" is clearly set

forth in the seminal case *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975). There, this Court held that the injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. *Id.* at 17. Stated another way, "there must be a sufficient causal nexus between the use of the motor vehicle and the injury." *Gooden, supra* at 797, and cases cited therein.

In *Koole v Michigan Mutual Ins Co,* 126 Mich App 483, 485, 488; 337 NW2d 369 (1983), lv den 419 Mich 856 (1984), an explosion occurring when the plaintiff lit a match to a gas-fueled heater in a camper body attached to a parked pickup truck was held to be foreseeably identified with the normal use of the camper for sleeping and camping.

> Specifically, we are persuaded that use of *this* vehicle for camping or sleeping constituted normal and foreseeable use as a motor vehicle and that such use properly encompassed operation of the gas-fueled heater or furnace. In short, the required causal nexus between the use of this motor vehicle as a motor vehicle and plaintiff's injuries has been established. [*Id.* at 488. Emphasis in original.]

In the instant case, the trial court distinguished *Koole* by explaining that in *Koole* the heater was a built-in heater whereas the heater in the instant case was a portable heater not designed or intended for use in a poorly ventilated place. The court believed that installation of such a heater was not a foreseeable use. We disagree on several grounds.

We know of no Michigan decision holding that the instrumentality causing the injury must be a built-in part of the vehicle. In fact, Michigan case law holds to the contrary. In *Perryman v Citizens*

*Ins Co of America,* 156 Mich App 359, 361; 401 NW2d 367 (1986), lv den 428 Mich 874 (1987), the plaintiff and his friend, Richard Petersen, set out from Marquette in late October, 1981, on a bird-hunting trip in the plaintiff's 1979 Dodge van. They stored their shotguns and gear on the floor at the back of the van. Arriving at their cabin about midnight, they parked the van on the grass and turned off the ignition and lights. In the darkness they gathered their gear. *Id.* Peterson reached for his gun, unzipped its case, lifted the gun and swung the gun around and over to get it out of the van. As he did so, the gun discharged, injuring the plaintiff. The plaintiff sued for no-fault benefits and moved for summary judgment under now MCR 2.116(C)(10). *Id.* at 362. The defendant argued that the van was merely the situs of the accident and that the plaintiff had failed to establish that his injuries were causally connected with his use of the van "as a motor vehicle." *Id.* at 364. Plaintiff's motion was granted. *Id.* at 362. On appeal, our Court affirmed, concluding that use of the vehicle for hauling hunting gear was a reasonably foreseeable use of the van, especially in the northern part of the state.

> [W]e think that the relatively confined and dimly lit quarters within which Peterson had to maneuver his weapon in order to unload it from the van contributed as one of the causes of the sequence of events which occurred in this case. [*Id.* at 365-366.]

Accordingly, this Court concluded that the vehicle was more than just the situs of the injury. *Id.* Whether the instrument causing the injury was part of or attached to the vehicle was irrelevant to this Court's decision. The determining factor was

whether the injury was foreseeably identified with the normal use of the vehicle.

Plaintiff's complaint alleges that the purchase of the 1979 Chevy van was made on the belief that the van had been converted into a recreational vehicle. Deposition testimony clearly established that decedent regularly used the van for camping and fishing trips and frequently slept in the vehicle. To us, it is reasonably foreseeable that a person owning a recreational vehicle and who camps overnight and sleeps in that vehicle would acquire a portable heater/stove for use in his vehicle.

While defendant claims that the vehicle had not been converted into a recreational vehicle and has submitted deposition and exhibit testimony in support thereof, plaintiff's factual allegations must be taken as true. *Knight v Limbert,* 170 Mich App 410, 415; 427 NW2d 637 (1988). In reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court accepts as true all of the nonmoving party's factual allegations as well as any conclusions which reasonably can be drawn therefrom. *Williamson v Jones,* 125 Mich App 433; 336 NW2d 489 (1983). Given the conflicting deposition testimony as to whether the Chevy van had been converted into a recreational vehicle, it is clear that a genuine issue of material fact exists. Where a genuine issue of material fact exists, summary disposition under MCR 2.116(C)(10) is improperly granted. Rather than determining the issue *as a matter of law,* it is far better to resolve the issue by proofs at trial.

An additional reason for finding error by the trial judge is the deposition testimony of plaintiff's engineering expert that the van itself was not vented suitably to allow sufficient oxygen to remain in the van for decedent to stay alive. The

engineering report theorized on the basis of the body's position that decedent may have awakened, but, upon attempting to arise, stumbled due to his body's having experienced an oxygen deficiency and, upon stumbling, struck his head on the couch, possibly rendering himself unconscious. Under these circumstances the van itself was a contributing factor to William Engwis' death and not just a mere situs of the injury. If there is something about the automobile itself causing the injury to occur, there is coverage under the no-fault act. *Denning,* 130 Mich App 789; *Perryman,* 156 Mich App 359.

Reversed and remanded for trial on the merits. Jurisdiction is not retained.