McKENZIE v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 161336. Submitted March 21, 1995, at Detroit. Decided June 27, 1995, at 9:10 A.M. Leave to appeal sought.

Frances McKenzie brought an action in the Wayne Circuit Court against Auto Club Insurance Association, seeking first-party no-fault insurance benefits for injuries he sustained when the propane furnace in his camper-trailer malfunctioned. The accident occurred while the plaintiff was asleep while on a hunting trip and the camper-trailer was attached to the plaintiff's pickup truck, which was insured under a no-fault insurance policy issued by the defendant. The court, Sharon Tevis Finch, J., granted summary disposition for the plaintiff. The defendant appealed.

The Court of Appeals *held*:

1. The plaintiff's use of the camper-trailer as sleeping accommodations constituted the use of a motor vehicle as a motor vehicle within the meaning of the no-fault act. The trial court properly granted summary disposition for the plaintiff.

2. The defendant admitted that the camper-trailer constitutes a motor vehicle, as defined by MCL 500.3101(2)(e); MSA 24.13101(2)(e). Although injuries that arise out of the use of a parked motor vehicle normally are not covered under the no-fault act, an exception to the general rule applies here because the plaintiff was occupying the vehicle. MCL 500.3106(1)(c); MSA 24.13106(1)(c).

3. Where a dual-purpose vehicle is being used for a nonlocomotive purpose, coverage is not precluded solely because there was no vehicular movement at the time of the injury. The phrase "as a motor vehicle" does not limit coverage to vehicular movement on a highway.

Affirmed.

1. INSURANCE — NO-FAULT — PARKED VEHICLES.

Injuries that arise out of the use of a parked motor vehicle normally are not covered under the no-fault insurance act;

REFERENCES

Am Jur 2d, Insurance §§ 633, 635, 636.

See ALR Index under Automobile Insurance.

however, an exception to the general rule is provided where the insured was occupying the vehicle at the time of the injury (MCL 500.3106[1][c]; MSA 24.13106[1][c]).

2. Insurance — No-Fault — Vehicular Use of Motor Vehicle.

In order to assess whether the requisite causal connection between an injury and a motor vehicle exists so as to trigger no-fault benefits, the primary consideration must be the relationship between the injury and the vehicular use of the motor vehicle; the relationship must be more than incidental, fortuitous, or but for, and the vehicle's connection with the injury should be directly related to its character as a motor vehicle; however, where a dual-purpose vehicle is being used for a nonlocomotive purpose, coverage is not precluded solely because there was no vehicular movement at the time of the injury (MCL 500.3105; MSA 24.13105).

3. Insurance — No-Fault — Use of Motor Vehicle as a Motor Vehicle — Vehicular Movement.

The phrase "use of a motor vehicle as a motor vehicle" in the no-fault insurance act does not limit coverage to vehicular movement on a highway (MCL 500.3105; MSA 24.13105).

4. Insurance — No-Fault — Parked Vehicles — Attached Trailers — Use of Motor Vehicle as a Motor Vehicle.

The use of a parked camper-trailer attached to a motor vehicle as sleeping accommodations constitutes the use of a motor vehicle as a motor vehicle within the meaning of the no-fault insurance act (MCL 500.3105, 500.3106[1][c]; MSA 24.13105, 24.13106[1][c]).

*Goren & Goren, P.C.* (by *Steven E. Goren*), for the plaintiff.

*Becker, Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *A. J. Galsterer* and *Danielle McCluskey-Schink*) (*Gross, Nemeth & Silverman, P.L.C.,* by *James G. Gross* and *Mary T. Nemeth*, of Counsel), for the defendant.

Before: Connor, P.J., and Wahls and Hoekstra, JJ.

Per Curiam. The issue in this case is whether

plaintiff is entitled to first-party no-fault benefits from his insurer. The trial court found that he was and granted his motion for summary disposition. We affirm.

The essential facts are not in dispute. On November 7, 1990, plaintiff was on a hunting trip and went to sleep in his twenty-eight-foot camper-trailer that was attached to his pickup truck. The propane furnace in the trailer malfunctioned and resulted in plaintiff's nonfatal asphyxiation. At the time, plaintiff carried no-fault automobile insurance through defendant. When defendant denied plaintiff's claim for first-party benefits, plaintiff filed this lawsuit. Both parties moved for summary disposition.

Defendant argues that the use of a camper-trailer as sleeping accommodations does not constitute the use of a motor vehicle "as a motor vehicle," and that the trial court should have granted its motion for summary disposition. We disagree.

The cardinal rule of statutory construction is to identify and give effect to the intent of the Legislature. *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27; 528 NW2d 681 (1995). The first step in ascertaining such intent is to focus on the language in the statute itself. *Id.* Here, Michigan's no-fault insurance law, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, is remedial in nature and must be liberally construed in favor of the persons intended to benefit from it. *Turner, supra,* p 28. Statutory interpretations and the granting of a motion of summary disposition are subject to review de novo on appeal. *Gentry v Allstate Ins Co,* 208 Mich App 109, 112; 527 NW2d 39 (1994); *Saraski v Dexter Davison Kosher Meat & Poultry,* 206 Mich App 347, 351; 520 NW2d 383 (1994).

Under personal protection insurance, an insurer is liable to pay benefits for accidental bodily injury

arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. MCL 500.3105; MSA 24.13105; *Turner, supra,* p 44. Defendant admits that plaintiff's camper-trailer constitutes a "motor vehicle" as defined by MCL 500.3101(2)(e); MSA 24.13101(2)(e). Injuries that arise out of the use of a parked motor vehicle are not normally covered under the no-fault act. MCL 500.3106(1); MSA 24.13106(1); *Miller v Auto-Owners Ins Co,* 411 Mich 633, 639; 309 NW2d 544 (1981). However, defendant admits that, because plaintiff was occupying the vehicle, an exception to this general rule applies. MCL 500.3106(1)(c); MSA 24.13106(1)(c).

In order to assess whether the requisite causal connection between an injury and a motor vehicle exists so as to trigger no-fault benefits, the primary consideration must be the relationship between the injury and the vehicular use of the motor vehicle. *Turner, supra,* pp 31-32. The relationship must be more than incidental, fortuitous, or "but for," and the vehicle's connection with the injury should be directly related to its character as a motor vehicle. *Id.,* p 32; *Thornton v Allstate Ins Co,* 425 Mich 643, 659; 391 NW2d 320 (1986). However, when a dual-purpose vehicle is being used for a nonlocomotive purpose, coverage is not precluded solely because there was no vehicular movement at the time of the injury. *Winter v Automobile Club of Michigan,* 433 Mich 446, 455; 446 NW2d 132 (1989); *Bialochowski v Cross Concrete Pumping Co,* 428 Mich 219, 228; 407 NW2d 355 (1987).

In *Bialochowski, supra,* p 222, the plaintiff was injured while working on the construction of a facility that required the pouring of cement at elevated levels. At the time of the accident, a motorized, four-wheeled, cement truck was parked

and stabilized on the site. *Id.,* pp 222-223. Permanently attached to the cement truck was a boom and a concrete pump, which was used to pump concrete to the elevated levels. *Id.* The concrete pump exploded, causing the boom to fall and crush the plaintiff. *Id.,* p 223. The Court held that motor vehicles are designed and used for many different purposes and that the phrase "as a motor vehicle" does not limit coverage to vehicular movement on a highway. *Id.,* p 228. Because the cement truck was being used for its intended purpose, coverage was not precluded by the statutory phrase "use of a motor vehicle as a motor vehicle." *Id.,* pp 228-229.

Decisions of this Court are in accord. In *Koole v Michigan Mutual Ins Co,* 126 Mich App 483, 485; 337 NW2d 369 (1983), the plaintiff went to sleep in a camper attached to his truck. When he awoke and lit a match, gas escaping from the furnace pilot light ignited and injured him. *Id.* This Court held that the camper's furnace was the instrumentality causing the injury. *Id.,* p 488. This Court was persuaded that the injuries were caused by the normal use of that vehicle—a pickup truck with attached camper—as a motor vehicle. *Id.* Similarly, in *Engwis v Michigan Mutual Ins Co,* 181 Mich App 16, 18; 448 NW2d 731 (1989), the decedent left on a fishing trip in his van. His death occurred when the flame on his portable heater went out and propane gas filled the van. *Id.* This Court held that summary disposition for the insurer was inappropriate and that a jury must determine whether the van had been converted into a recreational vehicle. *Id.,* p 23.

Here, as in *Koole, supra,* p 485, the motor vehicle in question was a pickup truck with an attached camper, and was intended for sleeping purposes. Moreover, as in *Koole, id.,* a malfunc-

tioning propane furnace caused the injury. Even if the furnace here had not been a permanent attachment to the vehicle, which it was, liability would have been proper. *Engwis, supra,* p 21. We hold that the use of a camper-trailer as sleeping accommodations constitutes the use of a motor vehicle "as a motor vehicle" within the meaning of the no-fault act. *Bialochowski, supra,* p 228; *Koole, supra,* p 488. Because the facts were not in dispute here, summary disposition for plaintiff was appropriate.

Although defendant urges that the Supreme Court has adopted a contrary course, the cases that defendant cites are either distinguishable or do not stand for the claimed proposition. In *Thornton, supra,* p 646, the plaintiff taxi driver was injured severely when a passenger robbed and shot him. Here, in contrast, the instrumentality that caused plaintiff's injury was permanently affixed to the trailer. In *Turner, supra,* p 32, the Court held that use of a truck for transportation purposes was an activity that was directly related to the truck's character "as a motor vehicle." The *Turner* Court, however, did not hold that transportational use was the only directly related use of a motor vehicle "as a motor vehicle." Finally, in *Winter, supra,* p 461, the Court held that a tow truck was parked and that none of the exceptions were applicable. Here, in contrast, defendant has conceded that an exception to the parked-vehicle rule applies. Accordingly, defendant's argument fails.

This decision does not render as mere surplusage the statutory phrase "as a motor vehicle." *See Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 228; 507 NW2d 422 (1993). A motor vehicle may be used in ways that are not covered under this statutory language. For exam-

ple, as argued above, a taxi driver who was robbed and shot in the neck by a passenger was not injured because of an inherent characteristic of the vehicle. *Thornton, supra,* p 661. Similarly, injuries involving parked vehicles generally do not involve the vehicle "as a motor vehicle." *Miller, supra,* p 639. Our decision today is consistent with these Supreme Court cases that show that the statutory phrase has not been rendered mere surplusage.

Affirmed.