McKENZIE v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 103676. Argued January 7, 1998 (Calendar No. 7). Decided July 14, 1998. Rehearing denied 459 Mich 1203.

Francis McKenzie brought an action in the Wayne Circuit Court against Auto Club Insurance Association, seeking personal protection benefits under the no-fault act for injuries sustained when he was asphyxiated while sleeping in a camper/trailer attached to his pickup truck. The court, Sharon Tevis Finch, J., granted summary disposition for the plaintiff. The Court of Appeals, CONNOR, P.J., and WAHLS and HOEKSTRA, JJ., affirmed in an opinion per curiam (Docket No. 161336). The insurer appeals.

In an opinion by Justice TAYLOR, joined by Justices BRICKLEY, BOYLE, and WEAVER, the Supreme Court *held*:

Whether an injury arises out of the use of a motor vehicle as a motor vehicle under MCL 500.3105(1); MSA 24.13105(1) turns on whether the injury is closely related to the transportational function of motor vehicles. In this case, no coverage is triggered under the no-fault act.

The Legislature in MCL 500.3105; MSA 24.13105, clearly intended coverage of injuries resulting from the use of motor vehicles when closely related to their transportational function and only when engaged in that function. Moreover, requiring that an injury be closely associated with the transportational function of a vehicle before coverage is triggered has support in case law. In this case, it is clear that the requisite nexus between the injury and the transportational function of the motor vehicle is lacking. At the time the injury occurred, the parked camper/trailer was being used as sleeping accommodations. This use is too far removed from the transportational function to constitute use of the camper/trailer as a motor vehicle at the time of the injury.

Reversed and remanded.

Justice CAVANAGH, joined by Chief Justice MALLETT and Justice KELLY, dissenting, stated that in determining whether an insurer is liable for coverage on the basis of the use of a motor vehicle as a motor vehicle under subsection 3105(1), a court should decide whether the vehicle was being used for its intended purpose or purposes, and whether the usage had a sufficient causal relation-

ship to the injury to support an award of benefits. The camper/trailer in this case was used for one of its intended purposes, sheltering sleeping campers, and, thus, was used as a motor vehicle. The plaintiff was not injured by some outside force or actor. Rather, the injury was caused by the malfunction of the vehicle itself. The vehicle was not merely the locale of the injury, but was an integral part of it. The causal connection was not tenuous, but one of an integral nature; hence, coverage should obtain.

211 Mich App 659; 536 NW2d 301 (1995) reversed.

*Goren & Goren, P.C.* (by *Steven E. Goren*), for the plaintiff.

*Becker, Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *A. J. Galsterer*); *Gross, Nemeth & Silverman, P.L.C.*, of counsel (by *James G. Gross*), for the defendant.

TAYLOR, J. This case presents the issue whether plaintiff is entitled to personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, for injuries sustained when he was nonfatally asphyxiated while sleeping in a camper/trailer attached to his pickup truck. We conclude that plaintiff's injury is not covered by the no-fault act because it did not arise out of the use of a motor vehicle "as a motor vehicle" as required by MCL 500.3105(1); MSA 24.13105(1). Whether an injury arises out of the use of a motor vehicle "as a motor vehicle" turns on whether the injury is closely related to the transportational function of automobiles. We accordingly reverse the judgment of the Court of Appeals and remand for entry of summary disposition in favor of defendant.

I

The basic facts are undisputed.[1] While on a hunting trip, plaintiff and Hughie McKenzie slept in a camper/trailer attached to the back of plaintiff's pickup truck. The camper/trailer was equipped with a propane-fueled, forced-air heater. Ostensibly, because of either poor ventilation or improper exhaust in the unit itself, carbon monoxide fumes from the heater leaked into the camper/trailer and overcame the two men. Fortunately, they were found the following day and recovered after being hospitalized.

Plaintiff filed the present suit for PIP benefits under his no-fault insurance contract with defendant. Defendant moved for summary disposition, contending that there was no coverage because the camper/trailer was not being used "as a motor vehicle" at the time the injury occurred as required by § 3105. The trial court granted summary disposition for plaintiff, finding *Koole v Michigan Mut Ins Co*, 126 Mich App 483; 337 NW2d 369 (1983),[2] controlling. The Court of Appeals affirmed. 211 Mich App 659; 536 NW2d 301 (1995).

II

This case turns on whether plaintiff's injury, incurred while sleeping in a parked camper/trailer, arose out of the use of a motor vehicle "as a motor

---

[1] "[W]here there is no dispute about the facts, the issue whether an injury arose out of the use of a vehicle is a legal issue for a court to decide and not a factual one for a jury." *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 630; 563 NW2d 683 (1997).

[2] In *Koole*, the Court of Appeals found that the plaintiff was entitled to PIP benefits for injuries incurred when gas leaked from a heater in the plaintiff's camper and exploded when he awoke and lit a match. *Id.* at 485.

vehicle" as contemplated by § 3105. We are able to arrive at this ultimate question because all agree that this injury was occasioned while a person was occupying the vehicle as required by MCL 500.3106(1)(c); MSA 24.13106(1)(c).[3]

It is well to begin our analysis with the basic axioms of statutory construction:

> The rules of statutory construction are well established. First and foremost, we must give effect to the Legislature's intent. If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. Further, we are to give statutory language its ordinary and generally accepted meaning. [*Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135-136; 545 NW2d 642 (1996) (citations omitted).]

The "use of a motor vehicle 'as a motor vehicle' " limitation on no-fault coverage[4] had its origins in the Uniform Motor Vehicle Accident Reparations Act.

---

[3] In *Putkamer*, n 1 *supra* at 635-636, this Court set forth a three-step analysis for coverage regarding injuries relating to a parked motor vehicle:

> [A claimant] must demonstrate that (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle as a motor vehicle; and (3) the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for.

However, here, defendant concedes that the parked vehicle was occupied at the time of the injury, i.e., that one of the three exceptions of subsection 3106(1) was met. Accordingly, a two-part test, consisting of factors (2) and (3) from *Putkamer*, applies here.

[4] MCL 500.3105(1); MSA 24.13105(1) provides: "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."

*Thornton v Allstate Ins Co*, 425 Mich 643, 657; 391 NW2d 320 (1986). As noted in *Thornton,*

> [T]he commentary to the Uniform Motor Vehicle Accident Reparations Act (UMVARA), 14 ULA 55-56, § 1, explains that injuries covered by the act are limited by § 1(a)(2), (6) to those arising out of the maintenance or use of a motor vehicle as a motor vehicle:
>
> "[T]he requirement that use of the motor vehicle be 'as a motor vehicle' qualifies the term so that both the tort exemption and the availability of basic reparation benefits are more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package. For example, it has no application to an injury which occurs when a person slips and falls inside a travel trailer which has been parked at a camp site."
>
> While the commentary acknowledges the remaining ambiguity of the definition and the resultant possibility that some accidents "too far removed from the general activity of motoring" might be construed as being covered, the commissioners left more specific definition in borderline cases to the courts. [*Id.* at 657-658.][5]

As a matter of English syntax, the phrase "use of a motor vehicle 'as a motor vehicle' " would appear to invite contrasts with situations in which a motor vehicle is not used "as a motor vehicle." This is simply to say that the modifier "as a motor vehicle" assumes the existence of other possible uses and requires distinguishing use "as a motor vehicle" from any other uses. While it is easily understood from all our exper-

---

[5] We note that the injury at issue—asphyxiation in a parked camper/trailer—is remarkably similar to the example of a slip and fall in a parked travel trailer that the UMVARA commentators stated did not qualify for coverage. Similarly, the UMVARA commentary indicates that the injuries at issue in *Koole, supra* (explosion in a parked camper), and *Engwis v Michigan Mut Ins Co*, 181 Mich App 16; 448 NW2d 731 (1989) (asphyxiation by a portable propane heater in a parked van), did not arise out of the use of a motor vehicle as a motor vehicle.

iences that most often a vehicle is used "as a motor vehicle," i.e., to get from one place to another, it is also clear from the phrase used that the Legislature wanted to except those other occasions, rare as they may be, when a motor vehicle is used for other purposes, e.g., as a housing facility of sorts, as an advertising display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum. On those occasions, the use of the motor vehicle would not be "as a motor vehicle," but as a housing facility, advertising display, construction equipment base, public library, or museum display, as it were. It seems then that when we are applying the statute, the phrase "as a motor vehicle" invites us to determine if the vehicle is being used for transportational purposes.[6]

Lending support to this logical reading of the statutory language is that the Motor Vehicle Code states in pertinent part, " 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway . . . ." MCL 257.79; MSA 9.1879. Similarly, the dictionary definition of "vehicle" is "any device or contrivance for carrying or conveying persons or objects, esp. over land or in space . . . ." *Webster's New World Dictionary* (3d College Ed).

---

[6] Of course, as § 3106 indicates, a vehicle need not be moving at the time of an injury for the injury to arise out of the use of a motor vehicle as a motor vehicle, i.e., out of its transportational function. See, e.g., *Putkamer*, n 1 *supra* at 636-637 (the plaintiff's injury, incurred when she slipped on ice while entering her vehicle with the intention of traveling to her brother's home, was held to have arisen out of the use of a motor vehicle as a motor vehicle).

Accordingly, we are convinced that the clear meaning of this part of the no-fault act is that the Legislature intended coverage of injuries resulting from the use of motor vehicles when closely related to their transportational function and only when engaged in that function.[7]

Moreover, requiring that an injury be closely associated with the transportational function of a vehicle before coverage is triggered has support in much of our prior case law. We acknowledge that the expressed rationale of these cases was not articulated in terms of transportational function, and, indeed, some cannot be reconciled with this approach, but many are consistent with a focus on transportational function to determine whether the injuries at issue in those cases arose out of the use of a motor vehicle "as a motor vehicle."

In *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995), a truck involved in a multiple vehicle accident smashed into a building and started a fire when the truck's gas tank exploded. This Court held that the damage to the building arose out of the use

---

[7] The dissent accuses us of judicial activism. It is always gratifying to hear members of the judiciary concern themselves with judicial restraint and proper deference to the Legislature. We fully agree with these principles. But the dissent's concern is misplaced here. We have acted in accord with venerable norms of statutory construction by focusing on the language and syntax of the statute and then painstakingly endeavoring to be faithful to it even on pain of having to overrule some of our previous opinions. This repudiation of earlier efforts never comes easily to any judicial body and that is the case here. We have then not taken on a legislative role. Rather, it is paradoxically the dissent that attempts to rewrite the statute by effectively omitting portions of it. It is the dissent's position that an injury arising out of *any* intended use of a motor vehicle triggers coverage. This would accord no meaning to the phrase "as a motor vehicle." This a court cannot do, as we must read a statute to give meaning to every portion. That is what we have done and what separates us from the dissent.

of the truck "as a motor vehicle." *Id.* at 32. This holding was not surprising in that it indicated that no-fault insurance generally covers damage directly resulting from an accident involving moving motor vehicles. This, of course, is consistent with the approach that focuses on transportational function because moving motor vehicles are quite obviously engaged in a transportational function.

In *Putkamer v Transamerica Ins Corp of America,* 454 Mich 626, 636-637; 563 NW2d 683 (1997), this Court held that injuries incurred while entering a vehicle with the intent to travel arose out of the use of a motor vehicle as a motor vehicle. Because entering a vehicle in order to travel in it is closely related to the transportational function, *Putkamer* also comports with this approach.

In *Winter v Automobile Club of Michigan,* 433 Mich 446; 446 NW2d 132 (1989), this Court denied no-fault insurance coverage when it held that an injury resulting when a cement slab fell from a crane attached to a parked tow truck did not arise out of the use of a motor vehicle "as a motor vehicle." The *Winter* Court's holding turned on the fact that the truck was parked and none of the exceptions set forth in § 3106 applied. Accordingly, it was unnecessary to explicitly consider whether the injury arose out of the use of a motor vehicle "as a motor vehicle," as opposed to some other use. However, this holding is nonetheless consistent with the approach posited here because the injury arose out of the use of a motor vehicle as a foundation for construction equipment and was not closely associated with the transportational function.

In *Thornton, supra* at 660-661, and *Bourne v Farmers Ins Exchange*, 449 Mich 193, 203; 534 NW2d 491 (1995), this Court held that injuries arising from assaults in motor vehicles lacked a sufficient causal connection to the use of a motor vehicle as a motor vehicle to be compensable under the no-fault act.[8] These holdings also support the approach articulated here because assaults occurring in a motor vehicle are not closely related to the transportational function of a motor vehicle.

Additionally, the analysis in *Thornton* supports this approach. In *Thornton*, the Court held that injuries sustained by a taxi driver in the course of an armed robbery did not arise out of the use of a motor vehicle as a motor vehicle. It clearly concluded that only injuries arising out of the "functional use of a motor vehicle as a motor vehicle" triggered no-fault coverage. *Id.* at 661. It found that the taxi was merely the situs of the robbery. *Id.* at 660. It held that, while robbery-related injuries were arguably " 'foreseeably identifiable' with the occupational or commercial use of a motor vehicle *as a taxicab*, the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most, merely 'but for,' incidental, and fortuitous." *Id.* at 661. It focused on whether the alleged injury was causally related to the "vehicular use," "functional character," or "functional

---

[8] *Thornton* and *Bourne* focused on causation. We note that it is analytically helpful to consider "causation" separately from the question whether a motor vehicle is being used as a motor vehicle as *Putkamer* did. However, what constitutes use of a motor vehicle "as a motor vehicle" also figures in a causation analysis, i.e., whether an injury's relation to the use of a motor vehicle *as a motor vehicle* is more than " 'but for,' incidental, and fortuitous." *Thornton, supra* at 661. Thus, *Thornton* and *Bourne* bear on what constitutes use of a motor vehicle as a motor vehicle.

use" of a motor vehicle. *Id.* at 660-661. These terms were intended to distinguish use "as a motor vehicle" from other possible uses of a vehicle. Our approach here, focusing on transportational function, makes the same distinction and provides a more specific definition for these terms.

Two cases cited by the dissent,[9] *Koole, supra,* and *Engwis v Michigan Mut Ins Co,* 181 Mich App 16; 448 NW2d 731 (1989), are inconsistent with an approach that focuses on transportational function. In both cases, injuries incurred in vehicles while the vehicles were being used as sleeping accommodations were held to be covered by the no-fault act. Use of a motor vehicle as a sleeping accommodation is distinct from and not closely related to the transportational function of a vehicle. These cases erroneously failed to distinguish use as a sleeping accommodation from use "as a motor vehicle" as required by § 3105. We are accordingly convinced that they were wrongly decided.

The dissent relies heavily on *Bialochowski v Cross Concrete Pumping Co,* 428 Mich 219; 407 NW2d 355 (1987), which is also inconsistent with the approach posited here. In *Bialochowski,* this Court concluded that an injury incurred while a cement truck was unloading its product arose out of the use of a motor vehicle as a motor vehicle. The Court stated at 228:

> Motor vehicles are designed and used for many different purposes. The truck involved in this case is a cement truck capable of pouring cement at elevated levels. Certainly one

---

[9] Our precise disagreement with the dissent lies in its proposition that when a multipurpose vehicle is used for any of its intended purposes, it is being used "as a motor vehicle."

of the intended uses of this motor vehicle (a motor vehicle under the no-fault act) is to pump cement. The accident occurred while this vehicle was being used for its intended purpose. We hold that the phrase "use of a motor vehicle as a motor vehicle" includes this use.

We find this holding utterly antithetical to the language of § 3105. As discussed above, § 3105's requirement that injuries arise out of the use of a motor vehicle "as a motor vehicle" clearly distinguishes use "as a motor vehicle" from other possible uses. *Bialochowski* eviscerates this distinction by holding that the use of the vehicle at issue to pump cement constitutes use "as a motor vehicle." Obviously, motor vehicles are designed and used for various purposes as the *Bialochowski* Court noted. In fact, only in the context of various possible uses would a limitation to use "as a motor vehicle" be necessary. Where the Legislature explicitly limited coverage under § 3105 to injuries arising out of a particular use of motor vehicles—use "as a motor vehicle"—a decision finding coverage for injuries arising out of any other use, e.g., to pump cement, is contrary to the language of the statute. Accordingly, we are convinced that *Bialochowski* was wrongly decided.

Entirely apart from this direct criticism of *Bialochowski*, we do not think it constitutes adequate support for the dissent's proposed rule that any intended use of a multipurpose vehicle constitutes use "as a motor vehicle."

First, this Court's subsequent decision in *Winter*, *supra* at 455, explicitly limited *Bialochowski*:

> Insofar as it related to the "as a motor vehicle" language, *Bialochowski* decided a narrow issue: whether a dual-purpose vehicle is necessarily not in use as a motor vehicle

when it is being used for a nonlocomotive purpose. *Bialochowski* held that coverage is not necessarily precluded solely because there was no "vehicular movement" at the time of the injury.

This all means that the *Winter* Court read *Bialochowski* to only establish that vehicular movement was not necessary to constitute use of a motor vehicle "as a motor vehicle." Here, the dissent's reading of *Bialochowski* as meaning that any intended use of a multipurpose vehicle is use "as a motor vehicle" effectively overrules the *Winter* Court's limitation of *Bialochowski*.

Second, the dissent's broad reading of *Bialochowski* does similar damage, albeit unacknowledged, to *Thornton*, where, as noted above, this Court held that only injuries arising out of the "functional use of a motor vehicle as a motor vehicle" triggered recovery. *Id.* at 661. The rule proposed by the dissent here turns on whether the injuries arise out of any of the intended uses of a motor vehicle. As is apparent, this rule is inconsistent with *Thornton*.

What we have, then, is the dissent resuscitating a broad reading of *Bialochowski* without even doffing its cap to the later and thus controlling limitation thereof by *Winter*. Moreover, the dissent fails to explicitly consider and give meaning to the language of the statute or to apply cases like *Thornton* that appropriately made such an analysis. This is a peculiar, and unfortunate, exercise of our judicial tasks.

In summary, we think that the language of the statute ought to control and that *Bialochowski* is inadequate support for the rule advocated by the dissent.

Accordingly, we hold that whether an injury arises out of the use of a motor vehicle "as a motor vehicle"

under § 3105 turns on whether the injury is closely related to the transportational function of motor vehicles.

If we apply this test here, it is clear that the requisite nexus between the injury and the transportational function of the motor vehicle is lacking. At the time the injury occurred, the parked camper/trailer was being used as sleeping accommodations. This use is too far removed from the transportational function to constitute use of the camper/trailer "as a motor vehicle" at the time of the injury. Thus, we conclude that no coverage is triggered under the no-fault act in this instance.

### III

Our conclusion on this issue requires us to briefly address a second issue raised by plaintiff. Plaintiff argues that, even if this injury did not arise out of the use of a motor vehicle as a motor vehicle, as required by the no-fault act, the policy of insurance at issue does not contain this requirement. Plaintiff's argument is, in effect, that the coverage under the insurance policy is broader than that required by the no-fault act. We disagree. While the policy exclusion regarding parked cars does not contain the use "as a motor vehicle" requirement, in preceding paragraphs on the same page, the policy plainly limits coverage generally:

> We agree to pay only as set forth in the Code [defined as the Michigan no-fault law] the following Benefits to or for an insured person who suffers accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle *as a motor vehicle*. [Emphasis added.]

Thus, the insuring agreement limited coverage even before the exclusion became applicable. See *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 172; 534 NW2d 502 (1995).

### CONCLUSION

For these reasons, we reverse the judgment of the Court of Appeals and remand for entry of an order granting defendant's motion for summary disposition.

BRICKLEY, BOYLE, and WEAVER, JJ., concurred with TAYLOR, J.

CAVANAGH, J. (*dissenting*). This case calls on us to determine whether the plaintiff is entitled to personal protection insurance benefits under the no-fault act[1] for injuries resulting from a nonfatal asphyxiation that occurred while he was sleeping in a camper/trailer attached to his pickup truck. Because I find that, under the tests enunciated in our past decisions, plaintiff meets the requirements of the act and is entitled to benefits, I dissent from the majority's holding. It appears that the majority's effort today adds a transportational use limitation to the statute where the Legislature has inserted no such term. Accordingly, I would affirm the judgment of the Court of Appeals, finding the plaintiff entitled to summary disposition in his favor on his claim for no-fault benefits.

I

"[W]here there is no dispute about the facts, the issue whether an injury arose out of the use of a vehicle is a legal issue for a court to decide and not a fac-

---

[1] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

tual one for a jury." *Putkamer v Transamerica Ins
Corp of America*, 454 Mich 626, 630; 563 NW2d 683
(1997). Here the facts are not in dispute, and, on
appeal, defendant claims error solely on the pur-
ported lack of use of the vehicle "as a motor vehi-
cle."[2] We are, therefore, presented only with the need
to determine whether the motor vehicle here was
used "as a motor vehicle," as required by subsection
3105(1) as a precursor to coverage.

This is not a new question, either here or in the
past decisions of our Court of Appeals. Indeed, the
trial court predicated its ruling on a belief that *Koole
v Michigan Mut Ins Co*, 126 Mich App 483; 337 NW2d
369 (1983), was controlling. This case, however, does
mark the first time this Court has addressed the ques-
tion in the context of a camper/trailer. Given that the
defendant concedes that the camper/trailer meets the
statutory definition of a motor vehicle, we should
turn to our past decisions to provide a framework to
analyze the question whether a motor vehicle was
being used "as a motor vehicle" at the time of the
injury.

An analysis of our past decisions reveals that there
are two distinct steps required to determine if a
motor vehicle at the time of injury, was being used as
a motor vehicle. The first step arises initially from
*Bialochowski v Cross Concrete Pumping Co*, 428
Mich 219; 407 NW2d 355 (1987).

---

[2] Defendant concedes that the camper/trailer was a motor vehicle as
defined in MCL 500.3101(2)(e); MSA 24.13101(2)(e). As will be discussed
further below, defendant also concedes that the requirement of MCL
500.3106; MSA 24.13106, which concerns limitations on the applicability of
coverage to parked vehicles, is met, because the vehicle was occupied at
the time of injury, satisfying MCL 500.3106(1)(c); MSA 24.13106(1)(c).

In *Bialochowski*, we addressed a situation where a pump attached to a parked concrete truck exploded, injuring the plaintiff. Focusing on the remedial nature of the no-fault act, and the balancing undertaken by the Legislature in enacting the statute, we found that it was clear that use "as a motor vehicle" "is not limited to normal vehicular movement on a highway."[3] In that case, we also determined that when a multipurpose vehicle was used for one of its intended purposes it was used "as a motor vehicle."[4] This establishes the parameters of the first step in my analysis.[5]

---

[3] *Id.* at 228. As we noted then, the Court has previously addressed the purposes of the no-fault act:

The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. [*Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978).]

We also noted that in exchange for this system assuring "prompt" reparation, an injured party's right to recover from a negligent owner or operator of a vehicle faced new limits. See MCL 500.3135; MSA 24.13135. *Bialochowski* at 228.

[4] *Bialochowski* at 228.

[5] In *Winter v Automobile Club of Michigan*, 433 Mich 446; 446 NW2d 132 (1989), this Court held that, when dealing with parked vehicles, in addition to making a determination that a vehicle is being used "as a motor vehicle," the Court must determine whether a criterion under subsection 3106(1) is met. Put differently, a determination that a motor vehicle is being used as a motor vehicle, and hence coverage is "otherwise available under § 3105(1) is qualified by the provisions of § 3106(1)." *Id.* at 457.

Subsection 3106(1) states that accidental bodily injury does not arise out of the use of a parked motor vehicle as a motor vehicle unless one of several specific statutory criteria is met. Subsection 3105(1) is where the general requirement of use of a motor vehicle "as a motor vehicle" arises. Under *Winter*, we must determine whether the requirements of both sections are met to reach a final conclusion. Here, however, because the defendant has conceded to the presence of a statutory criterion (occupied

While this Court has not yet spoken with respect to a situation exactly on point with this case, such occurrences are hardly new in Michigan. Our Court of Appeals has addressed this area in three decisions. One, *Engwis v Michigan Mut Ins Co*, 181 Mich App 16; 448 NW2d 731 (1989), involved an identical situation, an asphyxiation (this time fatal) from a leaking propane tank. The Court of Appeals found summary disposition for the no-fault insurer to be inappropriate.

In the other two cases, malfunctioning camper/trailer appliances (a heater and a stove) resulted in explosions. *Koole, supra,* was discussed previously in the margin and involved the ignition of gas vapors from a heater. The parties have also brought to our attention *Krolikowski v Auto Club Ins Ass'n,* unpublished decision of the Court of Appeals, issued March 8, 1993 (Docket Nos. 133558, 136457), which concerned a malfunctioning stove.[6] In both cases, the Court of Appeals held that no-fault coverage applied, and in both cases this Court denied leave to appeal.

For at least fifteen years, the published appellate decisions of this state have pointed clearly toward the resolution I would reach in this case. Besides comporting with my analysis, this trend points toward another consideration. Because no-fault benefits have clearly applied to situations involving camper/trailers, such as the one before us, I am confident that, at

---

vehicle) under subsection 3106(1), I would limit my analysis to subsection 3105, and, given the concession, have no need to engage in an analysis under *Winter.*

[6] I mention *Krolikowski,* an unpublished case, not for its precedential value, but rather to note that the instant case is not the first time this Court has been asked to review this sort of situation.

least since *Koole*, insurers have been on notice that they were liable for coverage in these instances. Accordingly, insurers have been at least capable of determining their rates for insuring such vehicles in light of such liability. To the extent that insurers could have, and in fact may have, charged for insuring such a risk, policy considerations do not support the windfall that acceptance of the defendant's arguments would entail.

In view of the clear requirements of *Bialochowski*, and in light of the policy considerations discussed above, our task should not be difficult. I would find the camper/trailer to have been used for one of its intended purposes, sheltering sleeping campers. Hence, under *Bialochowski*, I would find that the camper/trailer was used "as a motor vehicle."

II

My analysis, however, is not yet complete. Our past decisions indicate that, in addition to a determination under subsection 3105(1) of usage of a motor vehicle "as a motor vehicle," I must also determine whether there was a sufficient causal connection between this usage as a motor vehicle and the plaintiff's injury. *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986).

While *Thornton* is often cited as having discussed the use of a motor vehicle "as a motor vehicle," as it has been by the parties here, a close analysis of our decision reveals that we clearly decided that case on the basis of causation. As we have previously noted, "[i]n *Thornton* there was no question but that the taxi was being used 'as a motor vehicle.' However, this Court found a lack of causal connection between that

use and the plaintiff's injury."[7] Rather than involving a subsection 3105(1) question, this second step of my inquiry concerns causation. Where causation is lacking, coverage will not be found, despite usage of a motor vehicle "as a motor vehicle."[8] The important distinction here, which must be emphasized given the confusion evidenced by some of the arguments presented, is that our decision in *Thornton* was one of causation, not one concerning the presence or use of a motor vehicle "as a motor vehicle."

*Thornton* concerned the availability of no-fault benefits when a taxi driver was shot during an armed robbery of his cab. We found benefits to be unavailable, owing to a strained relationship with the driver's use of the motor vehicle as a motor vehicle. As we noted, "the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely 'but for,' incidental, and fortuitous."[9]

In *Thornton*, we found that the robber's bullet was too far removed from the use of a motor vehicle to allow recovery of no-fault benefits. Indeed, the fact that Mr. Thornton was operating a vehicle at that time had little to do with his injury. While we agreed that there might be an incidental or fortuitous connection (i.e., operating a taxicab might make one somewhat more likely to be the victim of an armed robbery), the vehicle was merely the locale of his injury. What injured Mr. Thornton had no connection to his vehicle. Rather, a gunman chose to shoot him, and the fact that Mr. Thornton happened to be driving his

---

[7] *Winter,* n 5 *supra* at 455, n 7 (citation omitted).

[8] *Thornton* at 660-661.

[9] *Id.* at 661.

vehicle at the time was an insufficient basis for allowing benefits.[10]

Conversely, the plaintiff here was not injured by some outside force or actor. Rather, it was the malfunction of the vehicle itself. The vehicle was not merely the locale of the injury, but rather was an integral part of it. Therefore, the causal connection was not the "tenuous" one of *Thornton,* but rather one of an integral nature, and, hence, coverage should obtain.

III

The majority, of course, seems to believe that *Bialochowski* "eviscerates" the distinction of § 3105 regarding use as a motor vehicle, and, furthermore, that apparently *Winter v Automobile Club of Michigan,* 433 Mich 446; 446 NW2d 132 (1989), should be read to eviscerate *Bialochowski.* As discussed in note 5, the actual issue with which *Winter* was concerned is conceded herein. While it is fairly clear that *Winter,* authored by a dissenter in *Bialochowski,* went to great lengths to attack *Bialochowski,* the actual holding of the case was very narrow. To the extent that the majority reads *Winter'*s rather expansive dicta to apply to a case where the actual *Winter* issue is *conceded,* I cannot agree.[11]

---

[10] Note, again, that there was no question that the vehicle in *Thornton* was being used "as a motor vehicle." If Mr. Thornton's paralysis resulted not from a bullet but from a crash or from injuring his neck upon striking a pothole, there is no doubt that there would have been coverage.

[11] The majority undertakes a considerable effort to suggest that *Bialochowski* cannot be read to support my conclusion herein. In my view, this effort fails, for several reasons.

First, in regard to the idea that *Winter* somehow "limited" *Bialochowski* on issues totally unrelated to the issues litigated therein, I note that the language of *Winter* at 455, as quoted by the majority (*ante* at 224-225),

As to the "evisceration" of the distinction of § 3105, this section, of course, speaks of use of a motor vehicle "as a motor vehicle." While this provision has certainly led to a fair amount of controversy, I cannot accept this as a rationale to undertake what the majority purports to do: replace "as a motor vehicle" with "for a transportational function." As my brethren in the majority have frequently pointed out in other contexts, and as we should all agree, where the Legislature has used language that is less than clear, we may be called on to interpret it, but we have no call, or right, to merely replace the Legislature's language with language of our own choosing. I turn to our past decisions to apply a consistent approach to an interpretation of this difficult section. While I tend to agree that the Legislature needs to clarify this section, rather than awaiting such a change in the statute, it appears the majority simply elects to make it.[12]

---

agrees, albeit in the most cumbersome terms, that vehicular movement is not required for usage of a motor vehicle "as a motor vehicle" to be found. Certainly, that quotation, like the statute itself, contains no trace of a limitation to those uses that involve a "transportational function," and implicitly even may be read as, at least in part, rejecting same by not requiring vehicular movement.

Next, regarding the purported damage to *Thornton* done by *Bialochowski*, the majority mixes apples and oranges. In order to reach this view, the majority first (*ante* at 222) forces a transportational function analysis into that case, yet another where it was noticeably absent (and, of course, where the case was actually decided on causation grounds). The point of *Thornton* had little to do with transportational functions in the use of motor vehicles (indeed, Mr. Thornton was driving his vehicle, and it was arguably involved in a far more transportational function than the vehicles in any of the other cases cited herein). Rather, *Thornton* dealt with a relational requirement between a claimed injury and a transportational function. Because Mr. Thornton's injury lacked a significant relationship to his operation of the vehicle, he could not prevail.

[12] In fact, the majority fails to admit the state of the law that it is today upsetting. At best, the Court might say that today it finally corrects a long-neglected area of law. At worst, the Court simply engages in result-

IV

A review of our past decisions indicates that an analysis under subsection 3105(1) to determine whether an insurer is liable for coverage on the basis of the use of a motor vehicle "as a motor vehicle" involves two discrete steps. First, we must determine whether the vehicle was being used for its intended purpose or, in the case of a multipurpose vehicle, for one of its intended purposes. Second, we must determine whether this usage had a sufficient causal relationship to the injury to support an award of benefits. For the reasons stated above, I find the answers to both questions in this case to be affirmative.

This case is clearly answered under our existing case law, and I would decline to undertake a realignment of our precedent to find otherwise. I would affirm the result of the Court of Appeals, finding the plaintiff entitled to summary disposition on his claim for no-fault benefits.

MALLETT, C.J., and KELLY, J., concurred with CAVANAGH, J.

---

oriented judicial activism and encourages litigants to steadfastly insist on litigation to enforce matters of settled law, and to continually resist settlement of claims and pursue review before this Court, regardless of the failure of past attempts, in the hope that a majority of the Court will simply favor their view *this* time. As one of my colleagues has noted, judicial activism can occur toward any particular result, and the Court's decision today, I fear, encourages litigants to seek out such activism and find hope in the prospect of it occurring in their favor. I decline to join such action.