**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 29, 2002**

STATE FARM FIRE AND CASUALTY,
COMPANY, a Foreign Corporation,
as Subrogee of IBRAHIM MROUE
doing business as Family Bakery,

    Plaintiff-Appellee,

v                            No. 117470

OLD REPUBLIC INSURANCE COMPANY,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

    We granted leave to appeal to consider whether the "household exclusion" provision of MCL 500.3123 applies where a person owning damaged property is insured under a no-fault property protection policy that does not cover the vehicle that person was operating at the time of the accident. We

hold that the exclusion applies in those circumstances. We thus reverse the judgment of the Court of Appeals and remand this case to the circuit court for further proceedings.

I. Underlying Facts and Procedural History

Ibrahim Mroue drove a rented Ryder truck into a bakery that he owned, causing damage to real and personal property. The Ryder truck was insured under a no-fault policy issued by defendant Old Republic Insurance Company. Plaintiff State Farm Fire and Casualty Company, the insurer of the real property, paid Mroue for the damages. As Mroue's subrogee, State Farm filed this action seeking indemnification from Old Republic for the amount that State Farm had paid to Mroue.

A no-fault insurer's liability to pay property protection benefits to its insured is subject to exceptions, including MCL 500.3123(1)(b), the "household exclusion," which provides:

> (1) Damage to the following kinds of property is excluded from property protection insurance benefits:
>
> * * *
>
> (b) *Property owned by a person named in a property protection insurance policy*, the person's spouse or a relative of either domiciled in the same household, *if the person named*, the person's spouse, or the relative *was the* owner, registrant, or *operator of a vehicle involved in the motor vehicle accident out of which the property damage arose*. [Emphasis added.]

The circuit court granted summary disposition for Old Republic on the ground that Mroue, the owner of the real

property, was a named insured in the Old Republic policy. Thus, since Mroue could not recover, State Farm could not recover as his subrogee.

The Court of Appeals reversed,[1] holding that the exclusion in MCL 500.3123(1)(b) did not apply because Mroue was not a named insured in the Old Republic policy. Old Republic appealed, and we remanded to the Court of Appeals for reconsideration. Our order directed the Court to consider whether MCL 500.3123(1)(b) excluded coverage only if a property protection insurance policy covered a "vehicle involved in the motor vehicle accident out of which the property damage arose," or if the statute precluded coverage regardless of whether the vehicle insured under a property protection insurance policy was involved in the accident.[2]

On remand, the Court of Appeals again reversed. It concluded that the phrase "by a person named in a property protection insurance policy" refers to the policy on the vehicle or vehicles involved in the accident. The Court stated that the use of the article "a" was not significant and that the grammatical construction of the sentence dictated the use of the article "a."[3]

---

[1] 234 Mich App 465; 595 NW2d 149 (1999).

[2] 461 Mich 928 (1999).

[3] 242 Mich App 105, 109; 617 NW2d 715 (2000).

## II. Standard of Review

This case requires us to ascertain the meaning and proper application of MCL 500.3123(1)(b). Issues of statutory interpretation are questions of law that we review de novo. *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 250; 632 NW2d 126 (2001); *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

## III. Principles of Statutory Interpretation

When interpreting statutory language, we must ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. *Huggett v Dep't of Natural Resources*, 464 Mich 711, 717; 629 NW2d 915 (2001); *Donajkowski, supra* at 248. Because the proper role of the judiciary is to interpret and not to write the law, courts do not have authority to venture beyond the unambiguous text of a statute.

Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory. *Wickens, supra* at 60. Further, we give undefined statutory terms their plain

and ordinary meanings. *Donajkowski, supra* at 248-249; *Oakland Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998).

## IV. Analysis

MCL 500.3123(1)(b) excludes property damage from no-fault property protection coverage if the property owner, the person's spouse, or a relative of either residing in the same household, is "named in *a* property protection insurance policy" and was "the owner, registrant, or operator of a vehicle involved" in the accident. Contrary to the Court of Appeals decision and the dissent's contention, the statute does not require that the individual be named in a property protection insurance policy covering "a vehicle involved in the motor vehicle accident out of which the property damage arose." 242 Mich App 109. Rather, the plain meaning of MCL 500.3123(1)(b) indicates that if Mroue was named in *a* property protection insurance policy and was the "operator of a vehicle involved" in the accident, coverage for damage to his property would be excluded. Whether the no-fault policy covered a vehicle involved in the accident is not relevant under the plain language of the statute. Therefore, if Mroue was named in a no-fault policy covering, for example, a personal vehicle, the statute would exclude property protection coverage. Stated another way, MCL 500.3123(1)(b) allows a

5

party in Mroue's circumstances to recover from the rental vehicle's insurer only if he was not named in a no-fault policy.

Like the Court of Appeals, our dissenting colleagues would essentially rewrite the statutory phrase "named in *a* property protection insurance policy" to state, "named in *the* property protection insurance policy." Thus, the dissent does not give effect to the distinct meanings of the words "a" and "the." In *Robinson v Detroit,* 462 Mich 439, 461-462; 613 NW2d 307 (2000), we overruled *Dedes v Asch*, 446 Mich 99; 521 NW2d 488 (1994), an earlier case that had misconstrued "the" to mean "a." We explained in *Robinson* that

> (1) common English usage,
>
> (2) the rules of statutory construction enacted by our Legislature,[4] and
>
> (3) the assumption of legislator competence and comprehension that all courts should apply to acts of the Legislature,

make clear that a difference exists between the indefinite article "a" and the definite article "the."[5] We presume that

---

[4] See, e.g., MCL 8.3a.

[5] The following passage from *Hagerman v Gencorp Automotive*, 457 Mich 720, 753-754; 579 NW2d 347 (1998) (Taylor, J., dissenting), reflects the heart of the *Robinson* position:

> Traditionally in our law, to say nothing of our classrooms, we have recognized the difference
> (continued...)

the Legislature understood the distinct meanings of these terms.  We are not free to conflate their meanings.

The Court of Appeals and the dissent's reasoning that the grammatical construction of the sentence in the statute mandated the use of "a" instead of "the" is flawed.  The Legislature chose the specific construction of the sentence and was not bound by any particular language or structure.  If the Legislature had intended to use the definite article "the" instead of the indefinite article "a," it could have simply changed the construction of the sentence.  It is untenable that the Legislature intended a meaning other than that plainly expressed because it somehow felt itself confined to the particular grammatical construction utilized.

Our dissenting colleagues further contend, without citing any authority, that the phrase "a person named in a . . .

---

[5] (...continued)
between "the" and "a."   "The" is defined as "*definite article.* 1. (used, esp. before a noun, with a specifying or particularizing effect, *as opposed to the indefinite article or generalizing force of the indefinite article* a *or* an). . . ." *Random House Webster's College Dictionary*, p 1382. Further, we must follow these distinctions between "a" and "the" as the Legislature has directed that "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a. Moreover, there is no indication that the words "the" and "a" in common usage meant something different at the time this statute was enacted . . . . [Emphasis in original.]

policy" is clearly linked to the subsequent phrase "[the] operator of a vehicle involved in the motor vehicle accident." They contend that the text would be rendered mere surplusage if the above phrases were not linked. The phrase "involved in the motor vehicle accident," however, follows the term "vehicle" and clearly modifies that term. Nothing in the text of the statute suggests that the phrase "involved in the motor vehicle accident" modifies the phrase "a property protection insurance policy." The dissent essentially rewrites the statute by reading the language "a property protection insurance policy" as stating "a property protection insurance policy *covering a vehicle involved in the motor vehicle accident.*"

It is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional obligation is to interpret—not to rewrite—the law. The Legislature apparently determined that where the household exclusion applies, damaged property should be covered, if at all, by a form of insurance other than a mandatory no-fault policy. Not only does our interpretation of the statute comport with the plain language of the text, but it is also consistent with the legislative intent that may reasonably be inferred from the text, i.e., to preclude a person who damages his own property from collecting property protection insurance

benefits under that person's no-fault policy.  In this case, the property damage clearly would have been excluded if Mroue had been driving his own vehicle.  The result should not be different merely because he was driving a rented one.

We acknowledge that our interpretation of the statute would allow a party in Mroue's circumstances to recover from an insurer in Old Republic's circumstances where that party does not have another no-fault policy, but would prevent recovery where he does.  While such a factor might be considered fortuitous, the plain language of the statute mandates this interpretation.

Further, perhaps the Legislature chose to exclude these risks from no-fault coverage to reduce consumer premium costs for this mandatory insurance.[6]  For example, MCL 500.3123(1)(a) also excludes from property protection insurance benefits:

---

[6] In *Michigan Educational Employees Mut Ins Co v Morris*, 460 Mich 180, 194; 596 NW2d 142 (1999), this Court recognized the Legislature's goal of rendering mandatory no-fault insurance affordable:

> "The no-fault insurance act was a radical restructuring of the rights and liabilities of motorists.  Through comprehensive action, the Legislature sought to accomplish the goal of providing an equitable and prompt method of redressing injuries *in a way which made the mandatory insurance coverage affordable to all motorists*." [Quoting *Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d 181 (1984) (emphasis added).]

> Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.

Therefore, a driver must obtain motor vehicle collision coverage to collect benefits for property damage to the driver's own vehicle. By exempting coverage for property that can be insured through policies other than a mandatory no-fault policy, the Legislature has, consistent with its ongoing efforts over the years,[7] attempted to make such mandatory insurance affordable.

## V. Conclusion

In these circumstances, the plain language of MCL 500.3123(1)(b) limits no-fault property protection benefits to persons not named in a no-fault property protection policy. Because this aspect of the statute was not considered in the circuit court, the record was not developed regarding whether Mroue was named in a no-fault property protection policy other than the policy covering the rental truck. Accordingly, we

---

[7] The Legislature made a similar effort to reduce mandatory insurance premiums when it revised the original no-fault scheme, 1972 PA 294, seven years after its enactment. The essential insurance act, 1979 PA 145, was designed, inter alia, to permit certain costly coverages to be excluded by insurers and thus to contain premium costs.

10

reverse the judgment of the Court of Appeals and remand this case to the Wayne Circuit Court for further proceedings consistent with this opinion.

WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, C.J.

S T A T E O F M I C H I G A N

SUPREME COURT


STATE FARM FIRE AND CASUALTY
COMPANY, a Foreign Corporation,
as Subrogee of IBRAHIM MROUE
d/b/a Family Bakery,

    Plaintiff-Appellee,

v                                       No. 117470

OLD REPUBLIC INSURANCE COMPANY

    Defendant-Appellant.
_____

CAVANAGH, J. (*dissenting*).

I disagree with the majority's conclusion that the "household exclusion" provision of the no-fault act applies if a person is named in *any* no-fault property protection policy.[1] Rather, I would conclude that the provision should apply only when the person (or a spouse or family member) involved in an accident causing property damage is named in the property protection insurance policy covering the vehicle operated in the accident. To hold otherwise elevates the literal reading

---

[1] MCL 500.3123(1)(b).

of the statute into an overbroad exclusion that hinges recovery on the fortuitous event that an individual owns *any* other no-fault policy.  Therefore, I respectfully dissent.

In this case, the Court was called upon to determine the meaning of MCL 500.3123(1)(b), which provides:

> Damage to the following kinds of property is excluded from property protection insurance benefits:
>
> * * *
>
> (b) Property owned by a person named in a property protection insurance policy, the person's spouse or a relative of either domiciled in the same household, if the person named, the person's spouse, or the relative was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose.

It is well settled that we must discern and give effect to the intent of the Legislature when applying statutes.  See *Sun Valley Foods v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999). First, the Court must examine the text, and, where there is no ambiguity, the statute must be applied as written.  See, e.g., *Tryc v Mich Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996).  However, if the meaning of the statute is ambiguous, the plain meaning as well as the placement and purpose of the words in the statutory scheme must be analyzed. *Sun Valley Foods* at 237.

2

In this case, the majority employs a method that extensively analyzes the meaning of "a" in reference to "a" policy of insurance, without considering the practical consequences or the statutory intent. While claiming reliance on the plain meaning of "a," the majority imposes an expansive interpretation on the article, prohibiting recovery for property damage where an individual involved in the accident has *any* no-fault policy, not simply when the individual has a policy for the vehicle involved in the accident.

Moreover, use of the article "a" is dictated by grammatical construction of the sentence and by the chance occurrence that the accident involved more than one vehicle and, thus, more than one policy, thereby precluding the use of "the." Had the Legislature intended such a broad exclusion simply by choosing the word "a," the statute surely would have been drafted to reflect that unusual departure from the common purpose of "provid[ing] victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *McKenzie v Auto Club Ins Ass'n,* 458 Mich 214, 229, n 3; 580 NW2d 424 (1998). I am unconvinced that the use of the word "a" in the statute carries such a broad significance, and I am instead persuaded that the exclusion is intended to apply only to policies insuring vehicles involved in the accident.

The majority correctly acknowledges our duty to reasonably infer legislative intent from the text of statutes. Unfortunately, the Court fails in this duty by proclaiming irrelevant a portion of the statutory text it would prefer to ignore.

> Whether the no-fault policy covered a vehicle involved in the accident is not relevant under the plain language of the statute. [Slip op, p 5.]

To the contrary, the text of the statute excludes coverage only for "[p]roperty owned by a person named in a property protection insurance policy . . . if the person named . . . was the owner, registrant or operator of a vehicle involved in the accident . . . ." MCL 500.3123(1)(b). Though not entirely without ambiguity, the statute clearly links "a person named in a . . . policy" with "the operator of a vehicle involved in the accident" and, thus, excludes coverage only when the operator has a policy on the vehicle or vehicles involved in the accident. Otherwise, the text would be rendered mere surplusage. To declare "not relevant" a portion of a statute that would negate its conclusion illustrates the majority's excessive reliance on ambiguous terms at the expense of the most reasonable interpretation. Because the Court today ignores the forest for the trees, I would affirm the decision of the Court of Appeals.

KELLY, J., concurred with CAVANAGH, J.

4